2165

HISTORIC CHARLESTON FOUNDATION, Appellant v. Leonard
KRAWCHECK, Thomas McFall, Sandra Campbell, D.E. Inabinet,
Robert F. Rowe, Michael C. Robinson, and Edward K. Pritchard, III, as
members of and constituting the Board of Adjustment of The City of
Charleston, Herbert R. Stender, III, and Carolina Shipping Company
Inc., Co., Respondents. David Franklin HAYGOOD, Appellant v. The
BOARD OF ADJUSTMENT Of The CITY OF CHARLESTON, Re-
spondent.

(443 S.E. (2d) 401)

Court of Appeals

*Susan M. Smythe* and *Patricia L. Quentel,* both of *Buist, Moore, Smythe & McGee,* and *John M. Bleeker, Jr.,* Charleston, *for appellant.*

*M. Dawes Cooke, Jr.* and *Matthew H. Henrikson,* both of *Barnwell, Whaley, Patterson & Helms, William B. Regan* and *Frances T. Cantwell,* of Charleston, *for respondents.*

Heard Dec. 8, 1993.

Decided Apr. 4, 1994.

CURETON, Judge:

This appeal involves the appropriate standard to be applied by the City of Charleston's Board of Adjustment when deciding an application to demolish a nonconforming portion of an existing building, and construct in its place a bridge to connect the remainder of the building to a new building to be constructed on an adjacent lot. The Board approved the application over the objection of the Historic Charleston Foundation and David Franklin Haygood. The circuit court affirmed. Historic Charleston Foundation and Haygood appeal. We affirm.

Respondents Herbert R. Stender, III, and Carolina Shipping Company, Inc. (owners) own adjoining parcels of land at the foot of Gillon Street, which runs east towards the Cooper River from East Bay Street. A one-story structure which is attached to a multistory building substantially blocks the view corridor from East Bay Street to the Cooper River. This structure pre-existed the enactment of a view corridor ordinance.[1] The existing one-story structure, therefore, makes the use of the owners' lot nonconforming.

The owners sought permission to demolish the one-story building and build a bridge from the existing multistory building across the view corridor to a new building to be constructed[2] on an adjacent lot. The bridge would connect the second story of the existing multistory building to the new building. The demolition of the one-story structure would

---

[1] City of Charleston, S.C., Code § 54-36 (1978) provides, in part, as follows:

. . . .

(d) In all the Old City Heights Districts, structures shall be spaced so that no street prolonged toward the Ashley or Cooper River would be blocked by a building, thereby *preserving the vista* from the East Bay Street, East Battery, Lockwood Drive or Halsey Blvd.

(Emphasis added.)

[2] The Board also granted the owners a special exception to build the new building.

thereby partially remove the existing obstruction of the view corridor at ground level.

The Board declined to grant or deny the application on its initial hearing of the matter. Instead, the Board requested the owners place poles where the bridge was to be constructed so the Board could see the impact of the bridge on the surrounding area and to show the effect on the view of the harbor from the extension of Gillon Street. At the next meeting, the matter was again discussed at length and the Board referred the matter to the city attorney. The Board heard the matter a third time and granted the application.[3]

The Board, noting the application raised a novel issue, determined that the owners sought a change from one nonconforming use to another. The appropriate standard to be applied, they concluded, is the "equally appropriate or more appropriate" standard found in Section 54-10(3) of the Ordinance. The Board considered the nonconforming "use," in the context of the ordinance, as the blockage of the vista and the vertical relocation of the blockage as a change in that "use."

Applying the standard of Section 54-10(3), the Board determined that, although the view corridor would still be impinged upon under the owners' proposal, the intrusion would be less and is as appropriate as, or more appropriate than, the current situation. We agree.

## I.

There has been much discussion of whether the court's focus should be the contemplated change in the vista view or the change in the use of the existing building.

---

[3] In all three meetings the City recommended approval of the application. In addition, the City submitted that the owners sought a change in a nonconforming use and the request was within the purview of Code § 54-10(3) (1975) which reads as follows:

3. A non-conforming use of a building or lot cannot be changed to another non-conforming use unless the Board of Adjustment, after a duly advertised public hearing, finds that the proposed use is equally appropriate or more appropriate to the district than the existing non-conforming [sic] use. In permitting such change, the Board of Adjustment may impose reasonable and appropriate conditions and safeguards for the protection of the public interest and the value of neighboring properties, including, but not limited to, limitations on the days & hours during which the proposed use may be open to the public.

We hold the nonconforming use that must be addressed is the use of the owners' land for the relocation of a new nonconforming structure (bridge) in the place of the one-story building which now occupies the land. Whether or not the relocation improves the vista view is the determinative factor in granting or denying the owners' application.

As noted above, the primary issue before this court is whether the Board erroneously determined that the owners' request to demolish the one-story portion of an existing building and the building of a bridge from the remaining portion of that building across the view corridor to a new multistory building, should be treated as a change in a nonconforming use under the Nonconforming Use Ordinance, rather than a variance under the Variance Ordinance.[4]

The cardinal rule of statutory construction is that courts will ascertain and effectuate the intent of the lawmaking body. In ascertaining the intent of the lawmaking body, the ordinance must be read as a whole; sections which are part of the same general statutory law must be construed together and each given effect if it an be done by any reasonable construction. *Burns v. State Farm Mut. Auto. Ins. Co.*, 297 S.C. 520, 522, 377 S.E. (2d) 569, 570 (1989); *Smalls v. Weed*, 293 S.C. 364, 370, 360 S.E. (2d) 531 (Ct. App. 1987).

The law recognizes two general principles of law regarding the nonconforming use of land and structures:

First, whether construction of a new structure to house an existing nonconforming use is permissible depends primarily on the applicable zoning ordinance. Secondly, the intention of all zoning laws, as regards a nonconforming use of property, is to restrict and gradually eliminate the nonconforming use.

---

[4] The variance standard is a stricter standard. Presumptively, the owners could not meet the hardship requirement under the variance standard. Additionally, except for the bridge, both two-story buildings would apparently be conforming uses under the Ordinance.

*Christy v. Harleston,* 266 S.C. 439, 443, 223 S.E. (2d) 861, 863 (1976).

■ Although the policy of the law is to restrict and gradually eliminate nonconforming uses, a municipality may by ordinance provide for the replacing of one nonconforming use with another nonconforming use. See *Higgins v. City of Baltimore,* 206 Md. 89, 110 A. (2d) 503 (1954); 83 Am. Jur. (2d) *Zoning and Planning* § 653 *et seq.;* Annot., 10 A.L.R. (4th) 1122 (1981); P.J. Rohan, *Zoning and Land Use Controls,* Vol. 6, Sec. 41-03[2][b]; A. Rathkopf, *The Law of Zoning and Planning,* Sec. 51A.03[1][a] (4th ed.); N. Williams & J.M. Taylor, *American Land Planning Law,* Sec. 112.01, 4A (1986).

Under appropriate statutory authority, the City of Charleston is authorized to enact legislation relating to the continuance, extension and substitution of nonconforming uses.[5] In accordance with this authority, the City of Charleston enacted Code § 54-10(3) (1975) which permits the owner of a nonconforming building or lot to change to another nonconforming use if approved by the Zoning Board of Adjustment, after a public hearing and if the Board determines the proposed new use "is equally appropriate or more appropriate to the district than the existing nonconforming use."

In deciding this appeal, we must keep in mind the fact that we are concerned with the meaning of the several provisions of Section 54-10, not with general and divergent views as to what such nonconforming provisions in zoning ordinances should mean. *Christy v. Harleston, supra* (whether the substitution of a nonconforming use is permissible depends primarily on the applicable zoning ordinance).

■ We give great deference to the decisions of those charged with interpreting and applying local zoning ordinances. *Purdy v. Moise,* 223 S.C. 298, 75 S.E. (2d) 605 (1953). This Court is not free to substitute its judgment for that of the Board. *Talbot v. Myrtle Beach Bd. of Adjustment,* 222 S.C. 165, 72 S.E (2d) 66 (1952). Accordingly, we will not reverse the circuit court's affirmance of the Board unless the

---

[5] We cannot discern from the record whether the City's Ordinance was promulgated under Chapter 23 of Title 5 or Chapter 7 of Title 6 of the S.C. Code of Laws, 1976.

Board's findings of fact have no evidentiary support or the Board commits an error of law. *Fairfield Ocean Ridge, Inc. v. Town of Edisto Beach*, 294 S.C. 475, 366 S.E. (2d) 15 (Ct. App. 1988). Giving deference to the interpretations of the Zoning Ordinance by the Board which is charged with its interpretation, we hold the actions taken my the Board fall within the Board's authority under § 54-10(3) (1975) of the City's Ordinance. The appellants note in their brief that the "purpose of the Vista Ordinance is to ensure that view corridors . . . will not be obstructed by structures." The facts of this case support the Board's finding that the proposed new use of the land to erect a structure that blocks less of the view corridor is "equally appropriate or more appropriate to the district than the existing nonconforming use."

## II.

As relates to the appellants' argument that the Board applied the wrong standard in approving the owners' application, they reason that once the one-story portion of the existing building is removed, the multistory portion of the building would not block the vista view and, thus, the lot would then become conforming. We reject this argument. While § 54-10(1) of the Ordinance provides that once the nonconforming use of land is discontinued, "as evidence by . . . substitution of a conforming use, any future use of said land shall be in conformity with the provisions of [the Zoning Ordinance]," we conclude that § 54-10(1) was not enacted to apply to a situation where the owner, pursuant to Code § 54-10(3), obtains prior administrative approval to remove a nonconforming use and replace it with another more appropriate nonconforming use. *See* 83 Am. Jur. (2d) *Zoning and Planning* § 659 (1992). Like-wise, we do not think Sections 54-10(2), 54-10(4) and 54-10(5) were so enacted.[6]

---

[6] City of Charleston, S.C., Code Sections 54-10(2), 54-10(4) and (5) read as follows:

2. The lawful use of a building or structure, existing at the time of the adoption of this chapter, or of an amendment thereto, although such use does not conform to the provisions hereof, may be continued and except for signs, which shall be governed by Section 54-9, such use may be extended through the buildings; provided no structural alterations are made, other than those necessary to assure the safety of the building or

A commonsense approach to the interpretation of the applicable provisions of the Ordinance convinces us that the City intended, in instances such as this, to permit a district to be benefited (upgraded) by the substitution of one nonconforming use for another more appropriate nonconforming use. To interpret §§ 54-10(1), 54-10(2), 54-10(4) and 54-10(5) to always prohibit a new use after discontinuance of a nonconforming use, even though the discontinuance was in contemplation of a new more appropriate use, would frustrate application of § 54-10(3). Statutes relating to the same subject should be construed together so as to produce a harmonious body of legislation. *The Lite House, Inc. v. J.C. Roy Co., Inc.*, ___ S.C. ___, ___, 419 S.E. (2d) 817, 819 (Ct. App. 1992). The courts will reject will an interpretation of a ordinance which leads to an absurd result which could not possibly have been intended by the lawmaking body. *Hamm v. South Carolina Public Service Comm'n*, 287 S.C. 180, 182, 336 S.E. (2d) 470, 471 (1985).

## III.

The appellants argue the Board erred in finding the bridge structure will be a more appropriate nonconforming use than the one-story portion of the existing building. We disagree.

The Board discussed at length the effect of granting the application. The Board considered arguments from special interest groups, photographs of the site, a proposed sketch of the bridge, and had the owners construct poles to depict the corridor view after construction of the bridge. We find the record contains sufficient evidence to support the Board's finding that after construction of the bridge there will be a lesser intrusion into the view corridor than that which currently exists, and that the proposed use of the owners' land will be as

structure, and provided, further, that such extension does not displace a conforming use in a district established by this chapter.

4. Whenever a non-conforming use of a building has been changed to a conforming use, such use shall not thereafter be changed back to a nonconforming use.

5. Whenever a non-conforming use of a building, or a portion thereof, has been discontinued, as evidenced by the lack of use, or vacancy for a period of at least one year, or by substituting a conforming use, such use shall be in conformity with the provisions of this chapter.

appropriate, if not more appropriate, than the existing use.

## IV.

Likewise, there is no merit to the appellants' argument that the nonconforming use of the lot was discontinued because the building had been vacant for more than one year. First, the only reference the appellants point to in the record relating to the building being vacant is the argument of the appellants' counsel to the trial court that the building had been vacant for "a long time." This is hardly proof[7] that the building had been vacant for over one year and that the owners had abandoned the use of their lot for an office building.[8] Secondly, we observe that the nonconformity involved here is the protrusion of the one-story portion of the building into the view corridor. That nonconformity clearly has not been removed.

Accordingly, we affirm the order of the trial court.

Affirmed.

HOWELL, Acting C.J., and GOOLSBY, J., concur.

---

[7] Ordinarily, arguments of counsel may not be considered as evidence in deciding factual issues. *Gilmore v. Ivey*, 290 S.C. 53, 348 S.E. (2d) 180 (Ct. App. 1986); *McManus v. Bank of Greenwood*, 171 S.C. 84, 171 S.E. 473 (1933).

[8] To constitute abandonment, it must appear that there was a discontinuance of the use with the intent to relinquish the right to use the property. The question is one of intention and must be determined from all surrounding facts and circumstances. *Conway v. City of Greenville*, 254 S.C. 96, 173 S.E. (2d) 648 (1970).