545 S.E.2d 531

**Wade M. JENKINS, Appellant/Respondent,**

v.

**Janna Grooms Watkins JENKINS, Respondent/Appellant.**

No. 3331.

Court of Appeals of South Carolina.

Heard March 7, 2001.

Decided April 16, 2001.

Rehearing Denied May 21, 2001.

90

Ben F. Mack and Jane McFadden, both of Charleston, for appellant/respondent.

Cynthia B. Castengera, of Columbia and D. Dusty Rhoades, of Charleston, for respondent/appellant.

HEARN, Chief Judge:

This is a cross-appeal in a divorce action. We affirm in part, reverse in part, and remand.

### FACTS

Wade M. Jenkins (Husband) and Janna Grooms Watkins Jenkins (Wife) were married in March 1987 and separated in October 1997. They have no children together.

Husband instituted this action against Wife in January 1998 seeking an order of separate maintenance and support, identification and equitable apportionment of marital property and debts, and attorney fees and costs. Wife answered and counterclaimed, seeking alimony, exclusive use and possession of the marital home, equitable apportionment of marital property and debts, and attorney fees and costs.

The family court entered a temporary relief order requiring Husband to pay Wife's car insurance premiums and any mortgage arrears on the marital home. The family court specifically noted in the order that it would "take into consideration any payments made by [Husband], pursuant to this Order, in its determination of a Final Order in this matter in balancing any equities or obligations...."

At the final hearing, Wife moved to amend her pleadings to include a plea for divorce on the ground of one year's continuous separation. Husband acquiesced, and the family court granted the motion. The family court granted Wife a divorce on the ground of one year's continuous separation; ordered

Husband to pay Wife $2,700 per month in rehabilitative alimony for one year; identified, valued and equitably apportioned marital property and debts; and awarded Wife $9,301.61 in attorney fees and costs.

Husband moved for reconsideration, averring in part that the family court's order failed to reimburse him for car insurance and house mortgage payments he made during the pendency of litigation "in order to keep property from foreclosure due to [Wife's] undisclosed failure to pay past due mortgage payments." The family court issued an order amending the divorce decree in part by apportioning to Wife $4,222.61 in fees and costs associated with the car insurance and mortgage expenses referenced in Husband's motion. After Husband filed his notice of appeal, the family court issued a supplemental order allowing the record to be supplemented with an affidavit submitted by Husband's attorney regarding fees and costs incurred in bringing the motion for reconsideration. Wife cross-appealed.

## SCOPE OF REVIEW

In appeals from the family court, this court has the authority to find the facts in accordance with its own view of the preponderance of the evidence. *Rutherford v. Rutherford,* 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992). This broad scope of review does not, however, require this court to disregard the findings of the family court. *Stevenson v. Stevenson,* 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981). Neither are we required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Cherry v. Thomasson,* 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981).

## DISCUSSION

### I. Rehabilitative Alimony

Both parties appeal the award of rehabilitative alimony to Wife. Husband asserts Wife failed to establish entitlement to rehabilitative alimony and the family court failed to set forth facts sufficient to support the award. Wife asserts the family

court erred in failing to award her permanent periodic alimony. We agree the award of rehabilitative alimony was improper.

Although rehabilitative alimony may be an appropriate form of spousal support in some cases, permanent periodic alimony is favored in South Carolina. *See Gill v. Gill,* 269 S.C. 337, 237 S.E.2d 382 (1977); *Johnson v. Johnson,* 296 S.C. 289, 372 S.E.2d 107 (Ct.App.1988). If a claim for alimony is well-founded, the law favors the award of permanent periodic alimony. *See O'Neill v. O'Neill,* 293 S.C. 112, 359 S.E.2d 68 (Ct.App.1987).

Rehabilitative alimony may be awarded only upon a showing of special circumstances justifying a departure from the normal preference for permanent periodic support. The purpose of rehabilitative alimony is to encourage a dependent spouse to become self-supporting after a divorce. *Johnson,* 296 S.C. at 301, 372 S.E.2d at 114; *Toler v. Toler,* 292 S.C. 374, 377, 356 S.E.2d 429, 431 (Ct.App.1987). It permits former spouses to develop their own lives free from obligations to each other. *Johnson,* 296 S.C. at 301, 372 S.E.2d at 114; *Toler,* 292 S.C. at 377, 356 S.E.2d at 431. However, it should be approved only in exceptional circumstances, in part, because it seldom suffices to maintain the level of support the dependent spouse enjoyed as an incident to the marriage. *See Johnson,* 296 S.C. at 301, 372 S.E.2d at 114; *Toler,* 292 S.C. at 377, 356 S.E.2d at 431; *Voelker v. Hillock,* 288 S.C. 622, 626–27, 344 S.E.2d 177, 180 (Ct.App.1986).

The factors to be considered in awarding rehabilitative alimony include: (1) the duration of the marriage; (2) the age, health, and education of the supported spouse; (3) the financial resources of the parties; (4) the parties' accustomed standard of living; (5) the ability of the supporting spouse to meet his needs while meeting those of the supported spouse; (6) the time necessary for the supported spouse to acquire job training or skills; (7) the likelihood that the supported spouse will successfully complete retraining; and (8) the supported spouse's likelihood of success in the job market. There must be evidence demonstrating the self-sufficiency of the supported spouse at the expiration of the ordered payments for rehabilitative alimony to be granted. *Johnson,* 296 S.C. at

301–02, 372 S.E.2d at 114; *Toler,* 292 S.C. at 377–78, 356 S.E.2d at 431.

At the time of trial, Wife was 52 years old, and Husband was 58 years old. Both parties are in relatively good health. Husband has a tenth-grade education. Wife obtained a four-year college degree. Husband maintained stable employment throughout the marriage, although a heart attack kept him from his job for six weeks in 1994. At the time of trial, he was employed as a sales representative with a gross monthly income of $6,285.50, excluding biannual commissions. In addition, Husband receives rental ·income of $567 per month. Wife, on the other hand, has been out of the work force since 1990. Prior to 1990, Wife was employed as a bookkeeper. In 1986, when Wife was last employed full-time, she earned an annual salary of $28,000. In 1990, when she was working only part-time, Wife earned approximately $13,000. According to Wife, Husband acquiesced in her decision to stop working outside the home.

In awarding Wife rehabilitative alimony, the family court reasoned:

> [Wife's] employment and earning potential is far less certain [than Husband's] and she has been virtually unemployed since 1990. [Husband] disputed [Wife's] reasons for being unemployed, which she has asserted were because of [Husband's] direction to remain in that status to deal with some of his personal affairs, including property dispute, litigation, taking care of the home and the financial affairs of the marriage. This Court gives more weight and credibility to [Wife's] testimony in light of the credibility factors reviewed as to Husband's credibility overall. As noted otherwise in these findings, [Wife] would need to be retrained with additional software training to accommodate possible employment as a bookkeeper.

The family court further found that the parties enjoyed a comfortable standard of living during the marriage, but Husband spent excessive amounts of money and time on trips to gambling casinos and playing video poker.[1]

---

1. The family court found Husband spent at least $367,000 since 1994 on gambling at one casino alone. Husband verified that, since 1994, he had made at least 123 trips just to that one casino and lost $22,755.

■ In our view, the facts and circumstances of this case do not warrant a departure from the well-established preference for permanent periodic alimony. We are particularly concerned here because Wife has been absent from the work force for an extended period of time, having foregone opportunities for advancement in favor of being a homemaker. The record does not contain evidence showing that Wife will, after a year of retraining, be able to maintain a lifestyle approaching that which she enjoyed during the marriage or even meet her basic expenses.

Accordingly, we reverse the award of rehabilitative alimony and remand the issue to the family court for determination of an appropriate award of permanent periodic alimony.

## II. Identification of Marital Property

### A. Oconee Property

■ Husband argues the family court erred in finding that a parcel of real estate located in Oconee County is marital in nature. We find no error.

■ S.C.Code Ann. section 20–7–473 (Supp.2000) defines marital property as:

"[A]ll real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation ... regardless of how legal title is held, except the following, which constitute nonmarital property: (1) property acquired by either party by inheritance, devise, bequest, or gift from a party other than the spouse...."

The burden of showing an exemption under section 20–7–473 is upon the party claiming that property acquired during the marriage is nonmarital. *Pool v. Pool,* 321 S.C. 84, 89–90, 467 S.E.2d 753, 757 (Ct.App.1996).

As part of his financial declaration, Husband supplied the family court with a Marital Assets Addendum, which identified as a marital asset:

---

These figures do not include Husband's other casino activity in New Jersey or Nevada, or the local gambling Husband verified he took part in frequently.

One (1) lot located on Lake Hartwell in Oconee County, S.C. Titled Owner, [Husband]. Acquired in 1987, $6,000 est. Estimated present market value $3,000.

At trial, Husband asserted his cousin deeded him the property in 1992 or 1993 in exchange for loans Husband made to the cousin over an extended period. Wife identified the property as a marital asset on her financial declaration, but asserted the property was purchased between 1990 and 1991. She assigned a value of $17,000 to the property.

The family court found the property was "purchased in 1992 for $3,000 during the marriage." As well, the court found Wife made significant contributions to the acquisition of the property since it was acquired with marital funds.

The record amply supports the family court's determination that the property was purchased during the marriage with marital funds. Husband made no showing that the property is subject to an exception under section 20–7–473. As such, the property was properly included in the marital estate for purposes of equitable distribution.

### B. Wife's Inherited Property

Husband also asserts the family court erred in failing to identify, value, and award him an interest in certain items of real and personal property inherited by Wife during the marriage and titled in her name. We find no merit in this argument.

Generally, property acquired by either party by inheritance or by gift from a party other than the spouse is nonmarital property. § 20–7–473(1). In certain circumstances, however, nonmarital property may be transmuted into marital property if: (1) it becomes so commingled with marital property as to be untraceable; (2) it is jointly titled; or (3) it is utilized by the parties in support of the marriage or in some other manner so as to evidence an intent by the parties to make it marital property. *Pool,* 321 S.C. at 86, 467 S.E.2d at 756. Transmutation is a matter of intent to be gleaned from the facts of each case. The spouse claiming transmutation must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage. *Id.*

It is undisputed Wife acquired the disputed property through inheritance. Husband offered no evidence at trial establishing transmutation of the property. Moreover, Husband also admitted at trial that he was not claiming an interest in any property titled solely to Wife with the exception of the marital home. The family court properly found the property retained its separate nature.

We also reject Husband's assertion the family court erred in failing to award him a special equity in Wife's inherited property. It is well-established that a spouse has an equitable interest in appreciation of property to which he contributed during the marriage, even if the property is nonmarital. *Webber v. Webber*, 285 S.C. 425, 428, 330 S.E.2d 79, 81 (Ct.App.1985). Here, Husband offered no evidence he contributed in any way during the marriage to the appreciation of Wife's inherited property.

## C. Georgetown Properties

Husband asserts the family court erred in finding that a 35–acre farm and rental home Husband acquired from his mother were marital property subject to equitable distribution and in awarding Wife an equal share in the properties. We disagree.

The family court found the parties used Husband's farm as a second home, and planned to make the farm their primary residence when Husband retired. They attempted to generate income from the property hoping to defer some of the costs for maintaining and improving the property. Primarily through Husband's direct contributions, the parties spent over $115,000 on the home and over $20,000 on improvements to the property. Wife was primarily responsible for the general care and maintenance of the property from 1987 until 1995, and she worked to improve the aesthetic appearance of the property. Moreover, Husband executed a will leaving all of his property, including the Georgetown property, to Wife.

Based on these facts, we agree with the family court that the parties treated the Georgetown farm and home in such a manner during the marriage as to evidence their intent that it become their common property. The court properly included

the property in the marital estate for purposes of equitable distribution.

Further, we find no reversible error in the family court's award to Wife of a one-half interest in the Georgetown properties. S.C.Code Ann. section 20–7–472 (Supp.2000) vests in the family court, not the appellate court, the discretion to decide what weight should be assigned to the various factors of equitable apportionment. On review, we look to the fairness of the overall apportionment; if the end result is equitable, it is irrelevant that we might have weighed specific factors differently than the family court. *Morehouse v. Morehouse,* 317 S.C. 222, 229, 452 S.E.2d 632, 636 (Ct.App.1994). This court will affirm the family court judge if it can be determined that the judge addressed the factors under section 20–7–472 sufficiently for us to conclude he was cognizant of the statutory factors. *Doe v. Doe,* 324 S.C. 492, 502, 478 S.E.2d 854, 859 (Ct.App.1996).

### D. Sampit Mills Property

Husband further asserts the family court erred in including a tract of land referred to as the Sampit Mills property in the marital estate, valuing the property, and awarding Wife a half-interest in the property. We find no error.

Husband purchased the Sampit Mills property during the marriage. Generally, property acquired by either spouse during the marriage is marital property unless the acquisition falls under one of several exceptions. § 20–7–473. One such exception is that property acquired during the marriage in exchange for nonmarital property is nonmarital. *Id.* The burden to show an exemption under section 20–7–473 rests on the party who claims the property is nonmarital. *Pool,* 321 S.C. at 89–90, 467 S.E.2d at 757.

Husband asserts the Sampit Mills property is nonmarital, despite being purchased during the marriage, because he obtained the purchase money by refinancing the Georgetown rental home. This argument is unavailing. The family court found, and we agree, that the Georgetown property was transmuted into marital property. Thus, Husband cannot claim this exception.

 Further, we find the court properly valued the asset. Wife's expert, an experienced appraiser, testified the Sampit Mills property had a value of $110,000 at the time of trial. The court acted within its discretion in adopting the value assigned by Wife's expert. *Woodward v. Woodward,* 294 S.C. 210, 215, 363 S.E.2d 413, 416 (Ct.App.1987) (stating the family court's valuation of property will be affirmed if it is within the range of the evidence); *Smith v. Smith,* 294 S.C. 194, 198, 363 S.E.2d 404, 407 (Ct.App.1987) (holding the family court may accept one party's valuations of marital property over those of the other party).

We find no abuse in the award to Wife of a one-half interest in the Sampit property. It is imminently clear from the order that the family court judge carefully weighed the statutory factors in arriving at the award. *Walker v. Walker,* 295 S.C. 286, 288, 368 S.E.2d 89, 90 (Ct.App.1988) ("This court will affirm the family court judge if it can be determined that the judge addressed the factors under section 20–7–472 with sufficiency for us to conclude he was cognizant of the statutory factors.").

### E. Wife's Individual Retirement Account

 Husband contends the family court erred in failing to award him an equitable interest in Wife's Individual Retirement Account (I.R.A.). We agree and remand this issue to the family court for reconsideration.

Wife submitted a financial declaration indicating her State Farm I.R.A. was titled in her name and acquired by her in April 1984, approximately three years prior to the date of marriage. The I.R.A. was valued at $8,675 as of February 1999.

The family court determined the I.R.A. was nonmarital since it was acquired prior to the marriage. Wife did testify, however, that she contributed $1500 per year for three years to her I.R.A. after her marriage. An addendum to Wife's financial declaration indicates Wife paid $1500 per year in annuity premiums from the time of marriage through 1991.

 Contributions to an I.R.A. during the term of marriage constitute marital property subject to division. §§ 20–7–472 & –473; *Calhoun v. Calhoun,* 331 S.C. 157, 175, 501

S.E.2d 735, 744–45 (Ct.App.1998) (stating annuity in which wife invested during marriage was part of marital estate and was subject to equitable distribution in divorce action); *Pool,* 321 S.C. at 89, 467 S.E.2d at 756 (holding contributions of $6000 which husband made to an I.R.A. during the marriage constituted marital property for purposes of property division at divorce proceeding); *Hickum v. Hickum,* 320 S.C. 97, 99, 463 S.E.2d 321, 322 (Ct.App.1995) (stating retirement plans are marital property subject to division). Accordingly, the trial court erred in failing to award Husband an equitable share of Wife's I.R.A. Because the record is unclear as to the total amount of Wife's contribution to her I.R.A. during the marriage, we remand this issue to the family court for determination.

### III. Equitable Division of Marital Home

■ Husband contends the family court erred in failing to award him a greater than fifty-percent share in the marital home. We disagree.

■ The apportionment of marital property is within the family court judge's discretion and will not be disturbed on appeal absent an abuse of discretion. *Bungener v. Bungener,* 291 S.C. 247, 251, 353 S.E.2d 147, 150 (Ct.App.1987). By statute, the family court must consider fifteen factors in making an equitable apportionment of the marital estate. § 20–7–472. The statute vests in the family court the discretion to decide what weight should be assigned to the various factors. This court looks to the overall fairness of the apportionment; if the end result is equitable, that this court might have weighed specific factors differently than the family court is irrelevant. *Johnson,* 296 S.C. at 300–01, 372 S.E.2d at 113.

Wife purchased the marital home from her father for $54,000 immediately following the parties' marriage. Wife's father fully financed the purchase. Wife made the mortgage payments on the home without contribution from Husband. When her father died, Wife partially satisfied the estate's mortgage with her separate property. In 1992, the parties refinanced the remaining $22,000 mortgage balance and obtained additional financing to make repairs to the home. As noted by the family court, Husband made direct contributions

to the maintenance of the home from August 1992 forward, including paying for utilities, repairs, maintenance, taxes, insurance, and the like. It is undisputed Husband paid the mortgage on the home after the refinancing.

Our review of the record convinces us the family court properly apportioned the marital home. Both parties made substantial direct and indirect contributions to the marital home. While Husband made greater direct contributions to the home than Wife following the 1992 refinancing, the funds he contributed were marital in nature. We are not persuaded Husband has established an abuse of discretion by the family court in failing to award him a greater share of the marital home.

## IV. Wife's Separate Property

Husband argues the family court erred in failing to give consideration to the parties' nonmarital property in arriving at an award of equitable distribution. We disagree. Our reading of the family court's order convinces us the court was well aware of the parties' nonmarital assets. In fact, the court specifically found Wife's separate property was valued at over $250,000. *Walker,* 295 S.C. at 288, 368 S.E.2d at 90 (stating appellate court will affirm family court judge's award of equitable distribution if judge addressed section 20–7–472 factors with sufficiency to conclude he was cognizant of them).

## V. $30,000 Loan Debt

Husband asserts the family court erred in requiring him to repay one-half of a $30,000 debt to Wife's mother. Specifically, Husband asserts the money was a gift to the parties. We agree.

Debts incurred for marital purposes are subject to equitable distribution. § 20–7–472(13). Section 20–7–472 creates a rebuttable presumption that a debt of either spouse incurred prior to marital litigation is a marital debt and must be factored into the totality of equitable apportionment. *Hardy v. Hardy,* 311 S.C. 433, 436, 429 S.E.2d 811, 813 (Ct.App. 1992).

Here, Wife's mother, Martha H. Grooms, testified that she loaned the parties $30,000 in 1992 for which she expected

reimbursement. Wife, too, testified her mother loaned the parties $30,000 in 1992. Neither Wife nor her mother, however, introduced into evidence a promissory note or cancelled check as proof that the payment was a loan. In fact, Grooms acknowledged Husband and Wife never signed any kind of note or I.O.U. because Grooms never asked them to do so. Moreover, Wife failed to list the $30,000 as a debt on her financial declaration.

Husband confirmed Grooms gave him and Wife $30,000 in 1992 which they used to pay house renovation expenses. Husband also characterized the disbursement as being interest-free, and testified there had been no requests to him from Grooms or Wife for repayment.

Loans from close family members must be closely scrutinized for legitimacy. *Allen v. Allen*, 287 S.C. 501, 507, 339 S.E.2d 872, 876 (Ct.App.1986). Our own review of the record convinces us Grooms gave Husband and Wife $30,000 with the possible expectation they would repay her. In Wife's own words, "It's one of those things where you look at things one way, and you see it one way. And you look at it a different way, and you see it another way." Here, the evidence presented by Wife and her mother was insufficient to establish the existence of a legally enforceable loan. At most, the evidence established a moral obligation on the part of Husband and Wife to repay Grooms. Accordingly, we reverse that portion of the order which requires Husband to reimburse Grooms $15,000.[2]

### VI. Apportionment of Marital Debt

■ Wife asserts the family court erred in reducing her share of the marital estate by apportioning to her certain debts incurred by Husband during the pendency of the case. We agree.

At the hearing on Husband's motion for reconsideration, his counsel requested that the court consider expenditures Husband made after the merits hearing in an attempt to preserve marital assets. Specifically, he stated Husband paid arrears

---

2. Since Grooms was not a party to this action, our resolution of this issue does not prevent Grooms from attempting to enforce this alleged obligation in a civil action.

on the marital home mortgage after Wife ceased paying the mortgage. Counsel for Wife objected to the request on the ground the issue was not raised during the final hearing. The court overruled the objection. Husband's counsel then recited several figures representing amounts Husband allegedly paid for her car insurance and in redeeming the marital home from foreclosure. Wife's attorney objected on the ground Husband failed to offer any proof of the allegations. Nonetheless, the family court ruled from the bench: "I find [Wife is] receiving those properties [the marital home and her automobile]. And taking into consideration those sums [Husband's attorney] published in the record, do an affidavit on the fees for your time involved, and deduct all that from the equitable distribution."

In its order on reconsideration, the family court reduced the amount of Wife's share in marital estate by $4,222.61. We agree with Wife this was error. The arguments of Husband's counsel did not constitute competent evidence of the amount of any debt Wife may have owed Husband. *See Historic Charleston Found. v. Krawcheck,* 313 S.C. 500, 508, 443 S.E.2d 401, 406 n. 7 (Ct.App.1994) ("Ordinarily, arguments of counsel may not be considered as evidence in deciding factual issues."). In the absence of any other evidence establishing the existence or amount of the debt, we reverse that part of the order on reconsideration which reduces Wife's award of equitable distribution and remand this issue for determination by the family court.

## VII. Attorney Fees

Both Husband and Wife argue the family court erred in awarding Wife $9301.61 in attorney fees. Husband asserts the court should have denied Wife's plea for attorney fees based on her ability to pay the fees from assets she received as a result of the court's award of equitable distribution. Wife asserts the family court erred in awarding her fees in an amount less than she actually incurred. Given our partial reversal of the family court's order, we remand the issue of attorney fees for reconsideration.

For the foregoing reasons, the decision of the family court is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

CURETON and SHULER, JJ., concur.