THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(D)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Theodore Thomas Robinson, Appellant,
v.
Christina Margaret Robinson, Respondent.
 
 
 

Appeal From Charleston County
 Jack Alan Landis, Family Court Judge

Unpublished Opinion No. 2005-UP-641
Submitted November 1, 2005  Filed December 15, 2005   

AFFIRMED

 
 
 
Thomas M. Neal, III, of Columbia, for Appellant.
Donald Bruce Clark, of Charleston, Emily G. Johnston, of Mt. Pleasant, for Respondent.
 
 
 

PER CURIAM:  Theodore Thomas Robinson (Husband) appeals a family court order distributing marital property between he and his former wife, Christina Margaret Robinson (Wife).  We affirm.[1]
FACTS
In 1996, Husband and Wife married in Nantucket, Massachusetts.  Following their marriage, Husband moved in with Wife and her three children into a Massachusetts home owned by Wife (hereinafter the Home).[2]  During the marriage, Wife granted Husband a one-half interest in the Home through a quitclaim deed, though she claims Husband somewhat tricked her into doing so.  Over the course of the marriage, Husband performed a substantial amount of work improving the Home, including masonry repair, rewiring, installing shelving units, and replacing the kitchens sub-floor.  Husband claims he also paid the mortgage payments on the Home, which included the payments on a homeowners insurance policy.  Wife, the sole owner of the insurance policy, claims she gave Husband monthly income she received from a prior spouse for child support to make the mortgage payments.  It is uncontested that the mortgage and insurance premiums were paid with marital funds.
In January 2002, the Home was completely destroyed by fire.  Pursuant to the insurance policy, Wife received $17,850 for rental payments, $103,177 to replace personal property, and $199,125 to rebuild the Home.  Following the fire, the couple decided to relocate and get a fresh start on their lives and marriage.  Husband sold his cleaning business for $17,000.  Using the insurance proceeds and funds from the sale of Husbands business, the couple made a down payment on a home in James Island, South Carolina.  In order to secure financing for the new home, a large amount of Husbands credit card debt was paid off with insurance proceeds.  The couple also used the policys proceeds to replace most of the familys personal possessions destroyed by the fire.  In August 2002, Husband, Wife, and Wifes two remaining dependent children moved into the South Carolina home.  That same month, the couple began rebuilding the Massachusetts home.  The rebuilding of the Home was funded entirely with Wifes insurance proceeds, but Husband claims he contributed significantly to the organization of the rebuilding efforts.
In the months following their move to South Carolina, the couples relationship broke down.  Once in South Carolina, both parties worked only sporadically.  Husband claims Wife was drinking too much and acting erratically.  Although he concedes he lacks proof of unfaithfulness and did not assert adultery as a ground for divorce, Husband maintains the belief that Wife was having extramarital affairs with a church deacon and others during this time period.  Wife cites Husbands baseless paranoia and wild accusations of infidelity as the leading cause of their marital difficulties.  
On March 1, 2003, Husband left the marital home and eventually moved back to Massachusetts.  Before leaving, Husband took Wifes name off a joint banking account containing approximately $14,000 of Wifes insurance proceeds.  He claims he spent a large portion of this money on family debts.  Nevertheless, Wife was left with only her monthly child support payments and three personal checks Husband left behind for her to buy groceries.  Husband later stopped payment on these checks.  On March 11, 2003, only days after leaving the marital home, Husband filed the present action for separate support and maintenance.  On this date, the rebuilding of the Massachusetts home had only progressed to the point of laying the foundation.
The rebuilding of the Massachusetts home was completed on December 12, 2003.  Shortly thereafter, the new residence sold for $365,000, resulting in a net profit of $251,499.  Due to the pending case, the parties agreed to disburse $40,000 of the profits equally between them (as an advance against any future award of equitable distribution) and place the remaining $211,499 in escrow until the pending resolution of this case.  
Following a two-day trial on Husbands action for separate support and maintenance, the family court entered a final order on April 22, 2004, distributing the marital property.  In regard to the Massachusetts home and the proceeds from its sale, the family court concluded that the asset was transmuted into marital property due to the joint title and Husbands substantial improvements on the original home.  In dividing this asset, however, the court awarded Husband only twenty-five percent of the proceeds from the homes sale.  Defending this division, the family court explained, as a result of the wifes prior ownership of the home, prior ownership of the insurance policy and the wifes purchase of the home out of foreclosure, [Wife earned a] special equity that warrants wife receiving a greater percentage of the value of the marital residence.  This appeal followed.
STANDARD OF REVIEW
In appeals from the family court, this court has authority to find the facts in accordance with our own view of the preponderance of the evidence. Woodall v. Woodall, 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996).  This broad scope of review, however, does not require us to disregard the findings of the family court.  Stevenson v. Stevenson, 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981).  We remain mindful that the family court judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  Bowers v. Bowers, 349 S.C. 85, 91, 561 S.E.2d 610, 613 (Ct. App. 2002).
DISCUSSION
I. The Massachusetts Residence
Husband contends the family court erred in awarding him only a twenty-five percent share of the proceeds from the sale of the Massachusetts residence.  We disagree.
The family court determined that the newly rebuilt Massachusetts home, although owned by Wife prior to the marriage, was transmuted into a marital asset.  See Johnson v. Johnson, 296 S.C. 289, 295, 372 S.E.2d 107, 110 (Ct. App. 1988) (holding nonmarital property may be transmuted into marital property if:  (1) it becomes so commingled with marital property as to be untraceable;  (2) it is jointly titled; or (3) it is utilized by the parties in support of the marriage or in some other manner so as to evidence an intent by the parties to make it marital property).  This ruling of the family court was not appealed and is therefore the law of the case.  See Bakala v. Bakala, 352 S.C. 612, 632, 576 S.E.2d 156, 166 (2003).   The conclusion that the proceeds from the Homes sale are marital property, however, does not necessarily dictate an even division of the funds.
All marital property, upon dissolution of a marriage, should be divided and distributed in a manner that fairly reflects each spouses contribution to its acquisition, preservation, and change in value.  See S.C. Code Ann. § 20-7-472(3) (Supp. 2004); Johnson, 296 S.C. at 293, 372 S.E.2d at 109.  In determining an equitable division of marital property, the family court must consider the factors set forth in South Carolina Code Section 20-7-472 (Supp. 2004), giving each factor the weight the court deems appropriate.  Jenkins v. Jenkins, 345 S.C. 88, 100, 545 S.E.2d 531, 537 (Ct. App. 2001).  This court will affirm the family court judge if it can be determined that the judge addressed the statutory factors sufficiently for us to conclude he was cognizant of them. Id.  
In the present case, the family court specifically addressed in considerable detail each of the equitable apportionment statutes fifteen enumerated factors.  See S.C. Code Ann. § 20-7-472 (Supp. 2004).  The court determined the large profits received from the Homes sale were largely due to the location of the home, the neighborhood it was in, and the fact that [Wife] purchased it years ago.  The court concluded Wifes prior ownership of the home and insurance policy and her purchase of the home out of foreclosure entitled her to a larger share of the proceeds from its sale.  Since a spouses contribution to acquiring a marital asset is one of the statutory factors, the family court acted within its discretion in heavily weighing Wifes acquisition of the Home and insurance policy.  See S.C. Code Ann. § 20-7-472(3) (Supp. 2004).  Furthermore, our own review of the record leads us to conclude Husband was generously compensated for his direct and indirect contributions to the marital residence with a twenty-five percent portion of the net sales proceeds.  See Johnson, 296 S.C. at 300, 372 S.E.2d at 113 ([T]his Court looks to the fairness of the overall apportionment.  If the end result is equitable, it is irrelevant that this court might have weighed specific factors differently than the trial judge.).  Because the family court addressed each of the statutory factors for equitable distribution, we affirm the family courts division of this marital asset.[3]  See Jenkins, 345 S.C. at 100, 545 S.E.2d at 537.
II. Debt Owed To Husbands Father
Husband contends the family court erred in not apportioning a debt owed to his father.  Specifically, he argues the couple owes his father interest payments on money that was borrowed, placed in escrow, but paid back to his father without being spent.  This issue is not properly preserved for our review.
Although Husband listed the debt owed to his father in his financial declaration and vaguely referenced the loans interest at the hearing, the family courts order merely addresses the debt as it applies to the propertys transmutation and does not rule upon the issue of apportioning the debt between the parties.  Because the family court did not specifically rule on this issue and Husband filed no Rule 59(e), SCRCP, motion to alter or amend the courts order, this issue is not preserved for appellate review.  See Widman v. Widman, 348 S.C. 97, 118-19, 557 S.E.2d 693, 704-05 (Ct. App. 2001) (holding an issue must be ruled upon by the family court or raised in a Rule 59(e), SCRCP, motion to be preserved for appellate review).
III. Funds From Joint Bank Account
Husband argues the family court erred in crediting him the $7,000 he took from the couples joint bank account prior to leaving the marital home because the funds were spent on marital obligations.  We disagree.
Although the family court order acknowledges Husband took $7,000 from the account, we find no reference to the funds in question in the apportionment of personal property and debt.  As such, we fail to see how Husband was actually credited this amount.  Furthermore, the issue of whether these funds were properly apportioned by the family court should have been raised in a Rule 59(e), SCRCP, motion to be preserved for our review.  Id.  Raising the issue in a post-trial motion would have clarified the family courts order, eradicating Husbands need to speculate on appeal as to the family courts treatment of these marital funds.
IV. Husbands Life Insurance
Husband contends the family court erred in crediting him, for the purposes of equitable distribution, with the $3,249 cash value of his life insurance policy.  We disagree.
Marital property is generally defined as all real and personal property acquired by the parties during the marriage.  See S.C. Code Ann. § 20-7-473 (Supp. 2004).  Accordingly, any active increase in the cash value of a life insurance policy over the course of a marriage is marital property.  Husbands life insurance policy was valued at approximately $3,000 when the parties married.  Husband, however, cashed out the policy during the marriage, rendering the policys cash value as zero.  At the present litigations time of filing, the policys value had been built back to $3,249.  Because this increase in the policys value was effectuated with marital funds over the course of the marriage, the family court properly included the asset as part of the marital estate.
V. Credibility of the Parties and the Breakup of the Marriage
In a vague argument which does not request the reversal of any particular aspect of the family courts order, Husband argues the family court erred in finding Wifes testimony regarding the breakup of the marriage credible, while concluding that his testimony on the subject lacked credibility.  Concomitantly, he argues the family court erred in concluding Husband was largely to blame for their matrimonial failings.  Supporting his contentions, Husband devotes much of his brief to some minor inconsistencies and sporadic equivocal episodes in Wifes testimony.  Although we review the facts of this case in accordance with our own view of the evidence, our deference to the family court judge regarding issues of credibility is well established.  See Bowers, 349 S.C. at 91, 561 S.E.2d at 613.    Due to the inconsequential nature of the faults in Wifes testimony and the fact that the family court judge was in a better position to evaluate witness credibility, we affirm this aspect of the family courts order.
VI. Marital Counseling
Husband argues the family court erred in failing to admit Wifes testimony concerning marital counseling the couple received in Massachusetts.  This issue is not preserved for our review.
Prior to trial, Husband requested that Wife willingly release records from marriage counseling the couple received in Massachusetts.  Wife refused to sign the release.  At the hearing, Husbands attorney sought to admit both his letter requesting the release and a letter from a church counselor in Massachusetts.  Wifes counsels objection to the admission of these letters was sustained and the letters were proffered into evidence.  Husband now argues the family court erred in not admitting Wifes testimony regarding the counseling.  The questions regarding the counseling, however, ceased upon the courts refusal to admit the letter and Wife was never further questioned on the subject.  Not only was no objection made addressing Wifes possible testimony, Husbands attorney never even posed the initial queries into the subject.  This issue, therefore, is not preserved for our review.  See Widman, 348 S.C. at 118-19, 557 S.E.2d at 704-05 (holding an issue must be raised to and ruled upon by the family court or raised in a Rule 59(e), SCRCP, motion to be preserved for appellate review).
VII. The Family Computer and Major Appliances
Husband also argues the family court erred in failing to credit Wife the value of the major appliances and the computer in the Charleston home.  Again, this aspect of the family courts final order was not raised to the court in a Rule 59(e), SCRCP, motion and, thus, is not preserved for appellate review.  Id.
VIII. Attorneys Fees
Husband argues the family court erred in awarding attorneys fees to Wife and, conversely, in failing to award attorneys fees to him, because he was, in fact, the prevailing party of the litigation.  We disagree.  
An award of attorneys fees is within the sound discretion of the family court and will not be disturbed on appeal absent an abuse of discretion. See Bowen v. Bowen, 327 S.C. 561, 563, 490 S.E.2d 271, 272 (Ct. App. 1997).  In determining whether to award attorneys fees, the family court should consider each partys ability to pay his or her own fees, the beneficial results obtained, the parties respective financial conditions, and the effect of the fee on the parties standard of living.  E.D.M. v. T.A.M., 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992). 
In the present case, the family court expressly considered each of these factors in considerable detail.  The court specifically found, as to the factor of beneficial results received by each party, that, due to the unreasonable nature of Husbands settlement demands, it was Wife who obtained the most beneficial result of the litigation.  Furthermore, the family court found many of the remaining factors favored an award of attorneys fees to Wife.  Because there is certainly evidence in the record supporting the conclusions of the family court regarding attorneys fees, we find no abuse of discretion in the award. See Henggeler v. Hanson, 333 S.C. 598, 605, 510 S.E.2d 722, 726 (Ct. App. 1998)  (finding no abuse of discretion in awarding attorneys fees when the family court considered the necessary factors and there was evidence supporting the courts conclusions).
For the foregoing reasons, the family courts order is
 AFFIRMED.
STILWELL, KITTREDGE, and WILLIAMS, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] The Home was awarded Wife in a prior divorce decree.  When Wifes first husband ceased making court-ordered mortgage payments, Wife used borrowed money to rescue the Home from foreclosure proceedings.
[3] The family court order refers to Wifes additional twenty-five percent interest in this marital asset as a special equity in the property.  Generally, the term special equity is used to describe the special interest a spouse gains in nonmarital property by contributing to an increase in the propertys value over the course of a marriage.  See, e.g., Calhoun v. Calhoun, 339 S.C. 96, 106, 529 S.E.2d 14, 20 (2000); Arnal v. Arnal, 363 S.C. 268, 294, 609 S.E.2d 821, 835 (Ct. App. 2005).  The term is not widely used to describe a spouses interest in marital property.  This semantic oddity, however, is not raised by Husband on appeal; thus, we will not discuss it further.