634 S.E.2d 51

**John DOE, Respondent,**

v.

**Jane DOE, Appellant.**

**No. 4132.**

Court of Appeals of South Carolina.

Heard May 9, 2006.
Decided July 3, 2006.
Rehearing Denied Aug. 25, 2006.

208

Emma I. Bryson, of Columbia and William S. Tetterton, of Camden, for Appellant.

George W. Speedy, of Camden, for Respondent.

HEARN, C.J.

In this action for divorce and equitable distribution, Wife appeals the family court's identification, valuation, and distribution of the marital estate. In addition, Wife appeals the family court's award of attorneys' fees, costs, and certain advancements to Husband. We affirm in part and reverse in part.

## FACTS

Wife and Husband were married on September 8, 1970, when Husband was seventeen and Wife was sixteen. Husband worked as a construction laborer until he began his own construction company in the 1980s. For the first fourteen years of their marriage, Wife had numerous jobs, one of which was at Jubilee Embroidery. At some time in the mid to late 1970s, while employed at Jubilee, Wife began having an affair with her boss (Paramour). In 1984, Wife ceased working after giving birth to a daughter (Daughter).

Although the parties had very few assets when their marriage began, they amassed a fairly large estate over the years. Husband's construction business was profitable, and Wife worked for the business approximately one day a week, keeping the books and offering decorating services. In 2002, after Daughter graduated from high school and moved out of the home to attend college, Wife asked Husband for a divorce. Husband testified he became suspicious when Wife refused to attempt marriage counseling. He hired a private investigator, who observed Wife entering a motel with Paramour. Husband recognized Paramour, not only because he had been Wife's former boss, but also because Paramour was a longtime

family friend. Wife later admitted the affair had been going on for more than twenty years.

Upon learning of the adultery, Husband called Paramour's wife to inform her of the relationship between their spouses. After speaking with her, Husband suspected the daughter he had raised might not be his biological child. He later had a DNA test, which confirmed his suspicions that Paramour was Daughter's biological father.[1]

Subsequently, Husband filed a complaint in the family court, asking for, among other things, a divorce on the grounds of adultery and an equitable distribution of the marital property. Notably, Husband did not seek a ruling regarding Daughter's paternity. In Wife's answer, she admitted the adultery.

At the final hearing, the parties presented evidence of the valuation of the marital property, the quality of Husband and Wife's relationship before separation, the costs associated with the divorce, and various advances made by Husband between the time of filing for divorce and the time of the hearing. Additionally, Husband presented evidence indicating Daughter was not his biological child and introduced the testimony of Dr. Perry Woodside, an economist, to establish the cost of raising a child. The family court issued a divorce decree granting Husband a divorce on the grounds of adultery; barring alimony to Wife; valuing the marital property at $1,332,798; awarding Husband seventy percent of the marital property; and ordering Wife to reimburse Husband for his advances, his attorneys' fees, his accountant's fees, and the cost of Dr. Woodside's testimony. Wife submitted a Rule 59(e), SCRCP, motion to alter or amend this decree, which the family court denied. This appeal followed.

## STANDARD OF REVIEW

"In appeals from the family court, the appellate court has the authority to find the facts in accordance with its view of the preponderance of the evidence." *Ex parte Morris,* 367 S.C. 56, 61, 624 S.E.2d 649, 652 (2006). However, "be-

---

1. Although the results of this test were not entered into evidence, Husband testified to the results without objection from Wife's counsel. Furthermore, Wife testified she "had been told that [Paramour] was declared the father."

cause the family court is in a superior position to judge the witnesses' demeanor and veracity, its findings should be given broad discretion." *Scott v. Scott,* 354 S.C. 118, 124, 579 S.E.2d 620, 623 (2003).

## LAW/ANALYSIS

### I. Identification and Valuation of Marital Property

Wife contends the family court erred in identifying and valuing the marital property. This issue is not preserved for our review.

To preserve an issue for appellate review, the issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court. *Floyd v. Floyd,* 365 S.C. 56, 73, 615 S.E.2d 465, 474 (Ct.App.2005). "Error preservation requirements are intended 'to enable the lower court to rule properly after it has considered all relevant facts, law, and arguments.'" *Staubes v. City of Folly Beach,* 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) (quoting *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000)). Without an initial ruling by the trial court, a reviewing court simply is not able to evaluate whether the trial court committed error. *Id.* Therefore, when an appellant neither raises an issue at trial nor through a Rule 59(e), SCRCP, motion, the issue is not preserved for appellate review. *Washington v. Washington,* 308 S.C. 549, 551, 419 S.E.2d 779, 781 (1992).

At trial, Wife made no arguments with respect to the valuation of the marital property. Additionally, Wife failed to specifically raise any issues with regard to valuation in her Rule 59(e) motion. Instead, she generally asserted that the divorce decree was unsupported by the evidence and that the family court judge failed to properly apply the equitable division statute. These broad assertions failed to preserve her appellate arguments relating to the identification and valuation of the marital estate.

### II. Daughter's Paternity

Wife argues the family court erred in making findings of facts that essentially determined Daughter's paternity. This issue has also not been preserved for our review.

Wife objected at trial to the consideration of Daughter's paternity, and the family court assured her that a "determination as to whether or not the child is bastardized ... is not a finding for the Court to make." The family court later stated "[t]here will be no finding as to the paternity of the child." However, in its written order, the family court found that "although the question of paternity was not before the Court, DNA testing and the admission of the wife has proven that the child is not the biological daughter of [Husband]." Although Wife made a motion to alter or amend the family court's order, she did not ask the family court to reconsider this finding. Under these circumstances, Wife failed to preserve this issue for our review. *See Pelican Bldg. Ctrs. of Horry–Georgetown, Inc. v. Dutton,* 311 S.C. 56, 60, 427 S.E.2d 673, 675 (1993) (holding when trial court's oral and written orders are inconsistent, appellant must bring these inconsistencies to the trial court's attention through a motion to alter or amend to preserve the issue for appeal).[2]

## III. Equitable Distribution

■ Wife argues the family court erred in distributing seventy percent of the marital property to Husband. Specifically, Wife contends the family court erred in considering the paternity of Daughter as a factor in equitable distribution, intimating that the length of the marriage favored Husband, penalizing Wife for her marital misconduct, and undervaluing her contribution to the marital estate. We agree.

■ The division of marital property is in the family court's discretion and will not be disturbed absent an abuse of that discretion. *Craig v. Craig,* 365 S.C. 285, 290, 617 S.E.2d 359, 361 (2005). Section 20–7–472 of the South Carolina Code (Supp.2005) provides fifteen factors for the family court to consider in apportioning marital property and affords the family court with the discretion to give weight to each of these factors "as it finds appropriate." On appeal, this court looks to the overall fairness of the apportionment, and it is irrele-

---

**2.** To the extent the proceedings here can be interpreted as an adjudication of paternity, we note this decision has no effect on Daughter. *See Palm v. General Painting Co., Inc.,* 302 S.C. 372, 374, 396 S.E.2d 361, 362 (1990) (holding child is not bound by prior adjudication of paternity in divorce proceeding).

vant that this court might have weighed specific factors differently than the family court. *Greene v. Greene*, 351 S.C. 329, 340, 569 S.E.2d 393, 399 (Ct.App.2002). Even if the family court commits error in distributing marital property, that error will be deemed harmless if the overall distribution is fair. *See West v. West*, 315 S.C. 44, 46, 431 S.E.2d 603, 604 (Ct.App.1993).

In awarding Husband seventy percent of the marital estate, the family court found "the two controlling factors" were the duration of the marriage and the conduct of the parties. The family court went on to say the marriage's dissolution was "solely at the hands of [Wife]" and Wife "duped her spouse through at least twenty years of the thirty-two year marriage into believing that he should love her." Additionally, the family court noted that Husband's contribution to the marital estate was ninety to ninety-five percent and that Dr. Woodside's testimony, which outlined the cost of raising a child, was relevant to the court's equitable apportionment determination.

We find the family court's seventy-thirty split in favor of Husband constituted an abuse of discretion. This was a marriage of significant duration. While there is certainly no recognized presumption in favor of a fifty-fifty division, we approve equal division as an appropriate starting point for a family court judge attempting to divide an estate of a long-term marriage. *See* Roy T. Stuckey, Marital Litigation in South Carolina 321–22 (3rd ed.2001 and Supp.2005) ("Although neither the case decisions nor the Equitable Apportionment of Marital Property Act say so directly, the results in cases involving long marriages would lead one to predict that, absent special circumstances, marital property will be divided on a 50–50 basis...."). Case law seems to bear out this trend. *See id.* (citing *Craig v. Craig*, 358 S.C. 548, 595 S.E.2d 837 (Ct.App.2004) (upholding a 50–50 division of marital property following a twenty-seven-year marriage), *aff'd by* 365 S.C. 285, 617 S.E.2d 359 (2005); *Widman v. Widman*, 348 S.C. 97, 557 S.E.2d 693 (Ct.App.2001) (affirming a 50–50 split in a sixteen year marriage that ended because of husband's adultery); *Mallett v. Mallett*, 323 S.C. 141, 473 S.E.2d 804 (Ct. App.1996) (noting the family court's 50–50 split was "generous," but ultimately affirming the award, which followed a twenty-one year marriage); *Doe v. Doe*, 324 S.C. 492, 478

S.E.2d 854 (Ct.App.1996) (affirming the family court's 50–50 split where the parties had been married over thirty years); *Murray v. Murray*, 312 S.C. 154, 439 S.E.2d 312 (Ct.App. 1993) (affirming the family court's award to Wife of a fifty percent "special equity interest" in the appreciated value of the family home, which was Husband's nonmarital property, following a seventeen-year marriage); *Harlan v. Harlan*, 300 S.C. 537, 389 S.E.2d 165 (Ct.App.1990) (affirming a 50–50 division of marital property following an eighteen-year marriage); *Kirsch v. Kirsch*, 299 S.C. 201, 203, 383 S.E.2d 254, 255 (Ct.App.1989) (affirming a 50–50 split and stating: "This was a marriage of thirty years. While Mr. Kirsch provided the bulk of the income, Mrs. Kirsch was a homemaker and she also worked for approximately twelve years outside the home."); *Smith v. Smith*, 294 S.C. 194, 363 S.E.2d 404 (Ct.App.1987) (affirming a 50–50 split in a marriage that lasted eighteen years, during which time Wife provided homemaker services and occasionally worked outside the home); *Leatherwood v. Leatherwood*, 293 S.C. 148, 359 S.E.2d 89 (Ct.App.1987) (affirming a 50–50 split of marital property following a twenty-two year marriage)).

We recognize that in many long-term marriages, one spouse becomes the primary breadwinner while the other spouse makes less or even no money in order to have the flexibility to keep the household running smoothly. This arrangement is agreed upon, often implicitly, among the parties, and it would be unfair to the spouse who undertook household duties for the family court to apportion the marital estate solely based on the parties' direct financial contributions. *See Walker v. Walker*, 295 S.C. 286, 289, 368 S.E.2d 89, 90 (Ct.App.1988) ("Equitable distribution is based on a recognition that marriage is, among other things, an economic partnership.").

This equal division of marital assets can, of course, be altered in favor of one spouse depending on the circumstances of each case. Here, for instance, Wife's adultery caused the breakup of the marriage, an appropriate consideration for equitable apportionment. However, we have consistently held that fault does not justify a severe penalty.[3] *See Dixon v.*

---

3. In defending the family court's division, Husband points out that in *Simmons v. Simmons*, 275 S.C. 41, 267 S.E.2d 427 (1980), our supreme

*Dixon,* 334 S.C. 222, 236, 512 S.E.2d 539, 546 (Ct.App.1999); *Rampey v. Rampey,* 286 S.C. 153, 156, 332 S.E.2d 213, 214 (Ct.App.1985). We believe that Wife's adultery, alone, does not justify a forty percent differential between her portion of the marital estate and Husband's portion. Indeed, such a lopsided division could only be sustainable if our equitable division laws sanction the consideration of fault as a permissible punitive factor. Our law is to the contrary, expressly disallowing fault as a penalty. Thus, Wife's adultery does not justify a forty percent equitable division differential.

In arriving at its seventy-thirty division, the family court specifically found Dr. Woodside's testimony regarding the cost of raising a child relevant. However, the issue of paternity was never properly before the court. In fact, Husband's complaint alleged that "of this marriage one child has been born, namely, [Daughter]." Because paternity was not an issue, the cost of raising Daughter, who was born during the marriage, was not relevant, and the family court erred in considering the testimony.

In light of the marriage's longevity, our prohibition against imposing a severe penalty for fault, and the family court's erroneous consideration of Dr. Woodside's testimony, we find the family court abused its discretion when it awarded Husband seventy percent of the marital estate. We believe the more equitable division would be sixty percent to Husband and forty percent to Wife.[4]

## IV. Advancements

■ Wife argues the family court erred in ordering her to reimburse Husband for certain advancements made on behalf

---

court upheld an apportionment of twenty-three percent of marital property to wife after her affair despite her contributions to the thirty-year marriage. We note, however, that this case was decided in 1980, six years prior to the enactment of section 20–7–472 of the South Carolina Code.

4. To accomplish this new division, Husband's share of the Bank of Camden account will be reduced to $326,180, and Wife's share of the account will be increased to $242,511. With these new figures, Husband will receive $799,730 of the overall estate, and Wife will receive $533,068 of the marital estate.

of Wife.[5] Wife specifically contends *Smith v. Smith*, 327 S.C. 448, 486 S.E.2d 516 (Ct.App.1997), provides that these payments, to the extent they are voluntary, do not entitle Husband to reimbursement. However, Wife did not raise this issue to the family court and did not challenge this portion of the ruling in her Rule 59(e), SCRCP, motion.[6] Therefore, this issue is not preserved for our review. *See Washington v. Washington*, 308 S.C. 549, 551, 419 S.E.2d 779, 781 (1992) (holding when an appellant neither raises an issue at trial nor through a Rule 59(e), SCRCP, motion to amend, the issue is not presented properly to an appellate court for review); *Floyd v. Floyd*, 365 S.C. 56, 73, 615 S.E.2d 465, 474 (Ct.App. 2005) (holding an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved for appellate review).

## V. Attorneys' Fees and Cost of Dr. Woodside's Testimony

 Wife argues the family court erred in ordering her to pay all of Husband's attorneys' fees.[7] Additionally, Wife contends the family court erred in admitting the testimony of Dr. Woodside and ordering her to pay the costs associated with his testimony. We address these issues separately below.

### A. Attorneys' Fees

 Wife argues the family court erred in ordering her to pay all of Husband's attorneys' fees. We agree.

---

5. Some of these advancements were made to Daughter. The family court required Wife to reimburse Husband for half of these advancements.

6. Not only was this issue not raised to the family court in a Rule 59(e) motion, but Wife also did not object to Husband entering in evidence a document outlining these expenses.

7. Wife also asserts the family court erred in requiring her to pay Husband's accountant's fee. However, in support of this argument she merely states "the accountant's fee was incorrect," and she does not explain why it was incorrect. Because Wife fails to point out a specific error, we deem her argument abandoned on appeal. *State v. Tyndall*, 336 S.C. 8, 16–17, 518 S.E.2d 278, 283 (Ct.App.1999) (explaining that conclusory arguments are deemed abandoned on appeal).

 Attorneys' fees may be assessed against a party in an action brought in the family court. S.C.Code Ann. § 20–7–420(A)(38) (Supp.2005); *Patel v. Patel,* 359 S.C. 515, 533, 599 S.E.2d 114, 123 (2004). The award of attorneys' fees is within the discretion of the court. *Hailey v. Hailey,* 357 S.C. 18, 31, 590 S.E.2d 495, 502 (Ct.App.2003). The trial court's decision regarding attorneys' fees will not be disturbed absent an abuse of discretion. *Green v. Green,* 320 S.C. 347, 353, 465 S.E.2d 130, 134 (Ct.App.1995).

"An order or judgment pursuant to an adjudication in a domestic relations case shall set forth the specific findings of fact and conclusions of law to support the court's decision." Rule 26(a), SCRFC. "Our case law and court rules make clear that when a contract or statute authorizes an award of attorney's fees, the trial court must make specific findings of fact on the record for each of the required factors to be considered." *Griffith v. Griffith,* 332 S.C. 630, 646, 506 S.E.2d 526, 534–35 (Ct.App.1998). "[W]hen an Order is issued in violation of Rule 26(a), this Court may remand the matter to the trial court or, where the record is sufficient, make its own findings of fact in accordance with the preponderance of the evidence." *Holcombe v. Hardee,* 304 S.C. 522, 524, 405 S.E.2d 821, 822 (1991); *Badeaux v. Davis,* 337 S.C. 195, 203, 522 S.E.2d 835, 839 (Ct.App.1999).

 In deciding whether to award attorneys' fees, the family court should consider: (1) each party's ability to pay his or her own fees; (2) the beneficial results obtained by counsel; (3) the respective financial condition of each party; and (4) the effect of the fee on each party's standard of living. *Upchurch v. Upchurch,* 367 S.C. 16, 28, 624 S.E.2d 643, 648–49 (2006); *Browning v. Browning,* 366 S.C. 255, 269, 621 S.E.2d 389, 396 (Ct.App.2005). To determine the amount of an award of attorneys' fees, the court should consider: the nature, extent, and difficulty of the services rendered; the time necessarily devoted to the case; counsels' professional standing; the contingency of compensation; the beneficial results obtained; and the customary legal fees for similar services. *Glasscock v. Glasscock,* 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991); *Deidun v. Deidun,* 362 S.C. 47, 65, 606 S.E.2d 489, 499 (Ct.App.2004).

 Here, in the family court's prelude to awarding attorneys' fees to Husband, the court noted: "[Husband] has incurred certain expenses in the bringing and maintaining of this action which would have not been necessary but for the conduct of [Wife]." After listing the amount of Husband's attorneys' fees, the family court specifically found "the reason [Wife] should bear these costs is that her adultery caused the divorce in spite of [Husband's] willingness to reconcile and her unwillingness to do so and because of the deception throughout the marriage concerning her adulterous activities and the birth of the child by [Wife's] paramour." A party's fault in causing a divorce, however, is not a factor to be considered when awarding attorney's fees. Furthermore, although the family court went on to consider factors that are relevant, such as the effect ordering attorney's fees would have on Wife's standard of living, Wife's ability to pay the fees, and the beneficial results obtained by Husband's attorneys, the family court neglected to consider two factors that weigh in Wife's favor: Husband's ability to pay and the relative financial situations of the parties. *See Upchurch*, 367 S.C. at 28, 624 S.E.2d at 648–49; *Browning*, 366 S.C. at 269, 621 S.E.2d at 396. Husband has earned a comfortable living with his construction business, and his employment status will not change as a result of the divorce. Conversely, Wife has only her share of the equitable distribution with which to pay these costs and must enter the workforce after a nearly twenty-year absence. We further note that our opinion today has reduced the beneficial results obtained by Husband.

Under these circumstances, we hold the family court erred in ordering Wife to pay Husband's attorneys' fees. Considering the parties' ability to pay their own fees, the beneficial results obtained by Husband's attorneys, the parties' respective financial conditions, and the effect of the fee on each party's standard of living, we believe Husband and Wife should be responsible for their own attorneys' fees.

### B. Cost of Husband's Economic Expert

 Wife contends the family court erred in ordering her to pay the costs of Dr. Woodside because his testimony was not relevant to equitable distribution. We agree the testimony of Dr. Woodside was irrelevant to this case and therefore

▮▮▮▮▮▮▮▮

hold the family court abused its discretion in ordering Wife to pay his costs.

▮▮▮ An award of litigation expenses rests within the sound discretion of the trial court and should not be disturbed on appeal absent an abuse of discretion. *Ellerbe v. Ellerbe,* 323 S.C. 283, 298, 473 S.E.2d 881, 889 (Ct.App.1996). The same considerations that apply to awarding attorneys' fees also apply to awarding litigation expenses. *Id.; see also Nienow v. Nienow,* 268 S.C. 161, 173, 232 S.E.2d 504, 510 (1977) (holding the same equitable considerations apply in awarding attorneys' fees and costs of litigation).

" 'Relevant evidence' means evidence having any tendency to make, the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. "Evidence which is not relevant is not admissible." Rule 402, SCRE.

As discussed earlier, Daughter's paternity was not an issue in this case. Indeed, Husband's own pleadings acknowledged she was his daughter. Therefore, the amount of money Husband spent on support for her was not relevant. Accordingly, the family court erred in admitting the testimony of Dr. Woodside and ordering Wife to pay his costs.

### CONCLUSION

We find Wife failed to preserve the issues of the family court's identification and valuation of the marital property, determination of Daughter's paternity, and award of advancements to Husband. We find the family court erred in awarding Husband seventy percent of the marital estate, and modify the division to a sixty-forty split in favor of Husband. Additionally, we find the family court erred in ordering Wife to pay Husband's attorneys' fees and the fees for Dr. Woodside. Accordingly, the family court's order is

**AFFIRMED IN PART and REVERSED IN PART.**

ANDERSON and KITTREDGE, JJ., concur.