721 S.E.2d 7

**Alice Ball FITZWATER, Appellant,**

v.

**Lloyd A. FITZWATER, Respondent.**

**No. 4919.**

Court of Appeals of South Carolina.

Heard Sept. 14, 2011.

Decided Dec. 14, 2011.

362

364

Melvin D. Bannister, of Columbia, for Appellant.

James H. Lucas, of Hartsville, and John S. Nichols and Blake A. Hewitt, of Columbia, for Respondent.

LOCKEMY, J.

In this domestic action, Alice Fitzwater (Wife) contends the family court erred in (1) failing to find Lloyd Fitzwater's (Husband) Antioch Church Road property was transmuted into marital property, (2) valuing Husband's retirement fund, (3) granting a sixty-forty division of the marital properties in favor of Husband, (4) granting Husband a special equity interest in the Hill Billy Way property, and (5) requiring Wife to contribute to Husband's attorney's fees and costs. We affirm.

## FACTS

Husband and Wife were married on September 20, 1997, and had no children. Prior to the parties' marriage, Wife was a licensed insurance agent. While Wife asserts her earnings were over $85,000 per year, Husband disputes that amount. However, the evidence in the record shows her average yearly salary was at least $40,000. After the parties married, Wife continued to earn minimal income from her insurance business,[1] and she worked on the farm at the marital home. Wife also had substantial debt and liabilities coming into the marriage. Husband, a nuclear engineering consultant, earned an average yearly income between $143,249 and $157,250 during the marriage. In addition to his salary, Husband owned several properties, including a home on Antioch Church Road in Alabama (Antioch property), a commercial property located at 205 South Broadway Street in Alabama (commercial property),[2] and a home in Darlington County located at 3941 Hill

---

1. Once married, Wife sold insurance "when [she] could." Most of the income from the insurance business was earned from renewals from policies sold prior to the marriage.

2. It is undisputed that the commercial property is marital property. The commercial property was sold during the marriage. The proceeds

Billy Way in McBee, South Carolina (Hill Billy Way property).[3] Husband purchased the Antioch property in 1982 and the commercial property in 1992. Husband mortgaged the Antioch property to finance improvements to the commercial property. Mortgage payments on the Antioch property were paid out of the parties' joint bank account. However, Wife's name was never added to the mortgage, and therefore, she was never an obligor on the note or mortgage. Further, Husband maintained a retirement account with Megan Corporation (Megan retirement fund) valued at $14,953.93. Upon marriage, the parties moved into Husband's residence and farm on the Hill Billy Way property. Wife eventually stopped working in the insurance business to care for the farm and purchase animals for the Hill Billy Way property.

On May 9, 2007, Wife initiated an action for a Decree of Separate Maintenance and Support, requesting an equitable division of the parties' marital assets and attorney's fees. Husband denied Wife was entitled to attorney's fees but joined Wife in her request for an equitable division of the parties' marital assets. Prior to the merits hearing, the family court granted both parties' motions to supplement their pleadings to request a divorce on the statutory ground of living separate and apart for a period in excess of one year.

On June 26, 2008, the family court granted the parties a divorce and ordered an equitable division of the marital estate with Husband receiving sixty percent of the marital estate and Wife receiving forty percent of the marital estate. The family court also awarded Husband a special equity interest of $140,000 in the Hill Billy Way property. The family court found $8,224.66 of Husband's Megan retirement fund was marital property subject to equitable division. Furthermore, the family court determined Husband's Antioch property was not transmuted into marital property and ordered Wife to pay $27,500 in attorney's fees.

---

from the sale of the commercial property were deposited into the parties' joint bank account. A marital property on Lake Wateree was subsequently purchased with the proceeds.

**3.** It is undisputed that the Hill Billy Way property is marital property. This property is the site of the marital home.

## STANDARD OF REVIEW

 "In appeals from the family court, this [c]ourt reviews factual and legal issues de novo." *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). Accordingly, this court has the authority to find facts in accordance with its own view of the preponderance of the evidence. *Lewis v. Lewis*, 392 S.C. 381, 392, 709 S.E.2d 650, 655 (2011). However, "we recognize the superior position of the family court judge in making credibility determinations." *Id.* "Moreover . . . an appellant is not relieved of his burden to demonstrate error in the family court's findings of fact." *Id.* "Consequently, the family court's factual findings will be affirmed unless 'appellant satisfies this court that the preponderance of the evidence is against the finding of the [family] court.' " *Id.* (quoting *Finley v. Cartwright*, 55 S.C. 198, 202, 33 S.E. 359, 360–61 (1899)).

## LAW/ANALYSIS

### I. Transmutation of Antioch property

 Wife argues the family court erred in failing to find the Antioch property was transmuted into marital property. We disagree.

 Property acquired prior to marriage is nonmarital property and is not subject to equitable division. S.C.Code Ann. § 20–3–630 (Supp.2010). Nonmarital property can, however, be transmuted into marital property and become subject to equitable division if the property: (1) becomes so commingled with marital property as to be untraceable; (2) is utilized by the parties in support of the marriage; or (3) is titled jointly or otherwise utilized in such a manner as to evidence an intent by the parties to make the property marital property. *Trimnal v. Trimnal*, 287 S.C. 495, 497–98, 339 S.E.2d 869, 870 (1986). "Transmutation is a matter of intent to be gleaned from the facts of each case." *Smallwood v. Smallwood*, 392 S.C. 574, 579, 709 S.E.2d 543, 545 (Ct.App.2011) (quoting *Jenkins v. Jenkins*, 345 S.C. 88, 98, 545 S.E.2d 531, 537 (Ct.App.2001)). " 'The spouse claiming transmutation must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common

property of the marriage.' " *Id.* at 579, 709 S.E.2d at 545–46 (quoting *Johnson v. Johnson,* 296 S.C. 289, 295, 372 S.E.2d 107, 110–11 (Ct.App.1988)). "Such evidence may include placing the property in joint names, transferring the property to the other spouse as a gift, using the property exclusively for marital purposes, commingling the property with marital property, using marital funds to build equity in the property, or exchanging the property for marital property." *Id.* at 579, 709 S.E.2d at 546 (quoting *Johnson,* 296 S.C. at 295, 372 S.E.2d at 111). "The mere use of separate property to support the marriage, without some additional evidence of intent to treat it as property of the marriage, is not sufficient to establish transmutation." *Id.* (quoting *Johnson,* 296 S.C. at 295–96, 372 S.E.2d at 111).

The evidence in the record supports the family court's finding that the Antioch property was nonmarital. The parties never used the Antioch property as a marital home, never placed the property in Wife's name, and Husband never made any substantial improvements to the property during the marriage. In addition, Husband, as the sole mortgagee, did not mortgage the Antioch property for the purpose of its acquisition, but mortgaged it to pay for improvements on the commercial property. While the parties paid the mortgage payments out of a joint bank account, Wife was never an obligor. Husband mortgaged the Antioch property to support the parties' marriage, and the record contains no other evidence of intent to treat the property as marital property.

■ In the alternative, Wife argues she is entitled to a special equity interest in the Antioch property because of the use of marital funds to pay for the mortgage and improvements to the property.[4] Wife's argument is unpersuasive. Section 20–3–630(A)(5) of the South Carolina Code (Supp.2010) "allows a spouse a special equity in the increase in value of

---

4. Wife specifically states, "In the alternative, the note and mortgage [on the Antioch property] should be marital property to the extent of the appreciation in the equity of the property due to reduction of debt paid with joint funds and costs of fixing up the house paid for with joint funds." This court views the contention as a request for a special equity interest in the Antioch property since the mortgage and note create a secured interest in the land. Wife asked for a "special equity interest" in the Antioch property in her Rule 59(e) motion as well.

nonmarital property when the spouse contributes directly or indirectly to the increase." *Pruitt v. Pruitt*, 389 S.C. 250, 263, 697 S.E.2d 702, 709 (Ct.App.2010). While the mortgage secured an interest in the Antioch property, the debt was incurred specifically for the financing of improvements to the commercial property, not for the acquisition of the Antioch property. The marital payments of that debt do not permit a special equity interest in the Antioch property. As to the marital funds used to finance improvements to the Antioch property, the evidence in the record reflects only cosmetic improvements were made during the marriage, and these would not have increased the equity. Accordingly, based on the preponderance of the evidence in the record, the family court's finding on the issue of transmutation of the Antioch property was proper.

## II. Valuation of Megan retirement fund

Wife argues in her brief the family court erred in valuing Husband's Megan retirement fund. However, at the hearing, Wife conceded this argument; thus, we affirm the findings of the family court.

## III. Division of Marital Estate

■ Wife argues the family court erred in awarding Husband sixty percent of the marital estate. We disagree.

■ The family court has wide discretion in determining how marital property is to be distributed. *Murphy v. Murphy*, 319 S.C. 324, 329, 461 S.E.2d 39, 41 (1995). It may use "any reasonable means to divide the property equitably." *Id.* at 329, 461 S.E.2d at 41–42. Section 20–7–472 of the South Carolina Code (Supp.2010) provides fifteen factors for the family court to consider in apportioning marital property and affords the family court the discretion to give weight to each of these factors as it finds appropriate. "On appeal, this court looks to the overall fairness of the apportionment, and it is irrelevant that this court might have weighed specific factors differently than the family court." *Doe v. Doe*, 370 S.C. 206, 213–14, 634 S.E.2d 51, 55 (2006) (citing *Greene v. Greene*, 351 S.C. 329, 340, 569 S.E.2d 393, 399 (Ct.App.2002)). Even if the family court errs in distributing marital property, such error

will be deemed harmless if the overall distribution is fair. *Id.* at 214, 634 S.E.2d at 55. While a fifty-fifty division is considered appropriate guidance, it is by no means a mandatory division. *Dawkins v. Dawkins,* 386 S.C. 169, 172, 687 S.E.2d 52, 53–54 (2010), *abrogated on other grounds by Lewis v. Lewis,* 392 S.C. 381, 709 S.E.2d 650 (2011).

Citing *Doe,* Wife contends the parties' ten-year marriage was a long term marriage deserving of a fifty-fifty equitable division. In *Doe,* our supreme court held a seventy-thirty equitable division was not appropriate for a thirty-two-year marriage, and a fifty-fifty division was an appropriate starting point for long term marriages. *Doe,* 370 S.C. at 214, 634 S.E.2d at 56. We note the ten-year marriage at bar is of a lesser duration than the shortest marriage cited in *Doe* and its relevant case law. *See id.* at 214–15, 634 S.E.2d at 56; *see, e.g., Craig v. Craig,* 358 S.C. 548, 595 S.E.2d 837 (Ct.App.2004) (upholding a fifty-fifty division of marital property following a twenty-seven year marriage), aff'd by 365 S.C. 285, 617 S.E.2d 359 (2005); *Mallett v. Mallett,* 323 S.C. 141, 473 S.E.2d 804 (Ct.App.1996) (noting the family court's fifty-fifty split was "generous," but ultimately affirming the award, which followed a twenty-one year marriage); *Kirsch v. Kirsch,* 299 S.C. 201, 203, 383 S.E.2d 254, 255 (Ct.App.1989) (affirming a fifty-fifty split for a thirty year marriage); *Leatherwood v. Leatherwood,* 293 S.C. 148, 359 S.E.2d 89 (Ct.App.1987) (affirming a fifty-fifty split of marital property following a twenty-two year marriage).

Furthermore, the evidence in the record demonstrates Husband's disproportionate contributions to this ten-year marriage. Wife brought in little to no money or assets during the marriage, while Husband provided the majority of income and assets. Wife argues she sacrificed a salary of $85,000 to fulfill marital duties; however, the record shows Wife admitted to only making "forty something thousand" in the years immediately prior to the parties' marriage. According to Husband, prior to the marriage, he paid $7,158.99 to one of Wife's credit card debts, and gave her a house rent free so she could get her finances in order. During the marriage, Husband also enabled Wife to build an inventory of animals and manage the farm, against his wishes, although the farm operated at a loss.

Accordingly, the evidence in the record supports the family court's finding as to the issue of equitable division.

### IV. Husband's Special Equity in the Hill Billy Way Property

Wife argues the family court erred in granting a special equity in the Hill Billy Way property to Husband. This issue is not preserved for our review.

At trial, Wife admitted Husband was entitled to a credit for his substantial work on the Hill Billy Way property prior to the marriage. In her Rule 59(e) motion, Wife argued the family court erred in the valuation of the Husband's special equity interest. On appeal, Wife argues the family court erred in following the method of accounting of a special equity interest used in *Cooksey v. Cooksey*, 280 S.C. 347, 312 S.E.2d 581 (Ct.App.1984), *overruled by Dawkins v. Dawkins*, 386 S.C. 169, 687 S.E.2d 52 (2010). Wife contends Cooksey was overruled on the issue of accounting of a special equity interest, and the family court should have used the method explained in *Toler v. Toler*, 292 S.C. 374, 380, 356 S.E.2d 429, 433 (Ct.App. 1987). Because Wife failed to raise this argument in her Rule 59(e) motion, it is not preserved for our review. *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693–94 (2003) (stating for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge).

### V. Attorney's Fees

 Wife argues the family court erred in requiring her to contribute to Husband's attorney's fees and costs. We disagree.

 In determining an award for attorney's fees, a family court should first consider the following factors as set forth in *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992) in deciding whether to award attorney's fees and costs: "(1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; (4) effect of the attorney's fee on each party's standard of living." In addition, a fee award must be based upon a reasonable hourly fee. Applying the [ ] six factors to determine an appropriate fee

award, the reasonableness of the hourly rate shall be determined according to: (1) the professional standing of counsel; and (2) the customary legal fees for similar services. The reasonableness of the number of hours billed shall be determined according to: (1) the nature, extent, and difficulty of the case; and (2) the time necessarily devoted to the case. *Glasscock v. Glasscock,* 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

Furthermore, "[t]his court has previously held when parties fail to cooperate and their behavior prolongs proceedings, this is a basis for holding them responsible for attorney's fees." *Bennett v. Rector,* 389 S.C. 274, 285, 697 S.E.2d 715, 721 (Ct.App.2010) (citing *Anderson v. Tolbert,* 322 S.C. 543, 549–50, 473 S.E.2d 456, 459 (Ct.App.1996)); *see also Donahue v. Donahue,* 299 S.C. 353, 365, 384 S.E.2d 741, 748 (1989) (holding husband's "lack of cooperation ... serves as an additional basis for the award of attorney's fees"); *Johnson v. Johnson,* 296 S.C. 289, 304, 372 S.E.2d 107, 115 (Ct.App.1988) (citing husband's lack of cooperation in discovery as basis for increasing wife's attorney fees award on appeal). "An adversary spouse should not be rewarded for such conduct." *Anderson,* 322 S.C. at 549, 473 S.E.2d at 459.

Wife argues the family court failed to consider Husband's ability to pay and the relative financial situations of the parties in ordering her to pay a portion of Husband's attorney's fees or, in the alternative, the family court did not give the appropriate weight to those factors. However, the family court considered all of the *E.D.M.* factors in ordering Wife to pay a portion of Husband's attorney's fees. The family court specifically addressed Husband's ability to pay and the parties' relative financial situation and found "[a]lthough Husband's earnings are superior to Wife's earnings [ ] it is appropriate to award to the Husband attorney's fees and costs." In addition, the family court relied on its findings that Wife raised several unsubstantiated allegations against Husband, requiring Husband to spend substantial amounts of money to defend himself against the allegations. Further, the family court found Wife refused to comply with discovery and unnecessarily prolonged the case. Accordingly, we believe the family court did not err in ordering Wife to pay a portion of Husband's attorney's fees, and therefore, we affirm the findings of the family court.

## CONCLUSION

Based on the foregoing reasons, the family court's decision is

**AFFIRMED.**

HUFF and PIEPER, JJ., concur.