785 S.E.2d 392

**Malia Ann FREDRICKSON, Respondent,**

v.

**Jeffrey Lawrence SCHULZE, Appellant.**

**Appellate Case No. 2014–000570.**
**No. 5400.**

Court of Appeals of South Carolina.

Heard Dec. 7, 2015.
Decided April 13, 2016.

Christian Stegmaier, of Collins & Lacy, P.C., of Columbia, for appellant.

Bruce Wyche Bannister and Luke Anthony Burke, both of Bannister, Wyatt & Stalvey, LLC, of Greenville, for respondent.

SHORT, J.

Jeffrey Lawrence Schulze (Husband) appeals the family court's divorce decree, arguing the court erred in (1) its identification, valuation, and apportionment of the marital estate and (2) ordering Malia Ann Fredrickson (Wife) and Husband to be responsible for his and her own attorney's fees. We affirm.

**FACTS**

Husband and Wife were married in 2005. Husband and Wife relocated to Greenville, South Carolina, and Husband began working as an independent insurance agent. Husband also managed properties titled in Wife's name and the couple's limited liability company, JFS, LLC (JFS), named after the parties' son's initials. Husband's highest level of education is a high school General Education Development (GED) diploma with some college classes. Wife is a dentist and a partner in two dental practices. Wife earned eighty-four percent of the parties' income during the marriage. The couple has one son.

Wife filed for divorce on the ground of habitual drunkenness. Prior to trial, Wife amended her complaint to include adultery. Husband countersued for divorce on the ground of one-year's separation.

A trial was held on November 12 and 13, 2013. The family court entered its final order and decree on January 10, 2014. The court granted a divorce, ordered equitable apportionment of the estate, ordered Husband to pay monthly child support to Wife, and denied both parties' requests for attorney's fees. The court also found Husband in contempt of a prior order

regarding communication between the two parties during the pendency of the proceedings. Husband filed a motion pursuant to Rules 52 and 59, SCRCP, seeking alteration and/or amendment of the final order. Wife also filed a motion to reconsider. On February 11, 2014, the court issued an order addressing the cross-motions and modifying certain valuations of the marital properties. These modifications increased Husband's share of the marital estate by $5,200 and Wife's share of the marital estate by $5,407. Husband appeals both orders.

## STANDARD OF REVIEW

"In appeals from the family court, this [c]ourt reviews factual and legal issues de novo." *Simmons v. Simmons,* 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). "[T]he appellate court has jurisdiction to find facts in accordance with its view of the preponderance of the evidence. However, this broad scope of review does not require this [c]ourt to disregard the findings of the family court." *Lewis v. Lewis,* 392 S.C. 381, 384, 709 S.E.2d 650, 651 (2011) (quoting *Eason v. Eason,* 384 S.C. 473, 479, 682 S.E.2d 804, 807 (2009)). This court will affirm the decision of the family court unless the decision is controlled by an error of law or the appellant satisfies the burden of showing the preponderance of the evidence supports contrary factual findings. *DiMarco v. DiMarco,* 399 S.C. 295, 299, 731 S.E.2d 617, 619 (Ct.App.2012).

## LAW/ANALYSIS

### I. Marital Estate

Husband argues the family court erred in its identification, valuation, and apportionment of the marital estate. We disagree.

■ Section 20–3–620(B) of the South Carolina Code (2014) provides fifteen factors for the family court to consider in apportioning marital property and affords the family court the discretion to give weight to each of these factors as it finds appropriate:

(1) the duration of the marriage together with the ages of the parties at the time of the marriage and at the time of the divorce or separate maintenance or other marital action between the parties;

(2) marital misconduct or fault of either or both parties, whether or not used as a basis for a divorce as such, if the misconduct affects or has affected the economic circumstances of the parties, or contributed to the breakup of the marriage; provided, that no evidence of personal conduct which would otherwise be relevant and material for purposes of this subsection shall be considered with regard to this subsection if such conduct shall have taken place subsequent to the happening of the earliest of:

(a) entry of a pendente lite order in a divorce or separate maintenance action;

(b) formal signing of a written property or marital settlement agreement; or

(c) entry of a permanent order of separate maintenance and support or of a permanent order approving a property or marital settlement agreement between the parties;

(3) the value of the marital property, whether the property be within or without the State. The contribution of each spouse to the acquisition, preservation, depreciation, or appreciation in value of the marital property, including the contribution of the spouse as homemaker; provided, that the court shall consider the quality of the contribution as well as its factual existence;

(4) the income of each spouse, the earning potential of each spouse, and the opportunity for future acquisition of capital assets;

(5) the health, both physical and emotional, of each spouse;

(6) the need of each spouse or either spouse for additional training or education in order to achieve that spouses's income potential;

(7) the nonmarital property of each spouse;

(8) the existence or nonexistence of vested retirement benefits for each or either spouse;

(9) whether separate maintenance or alimony has been awarded;

(10) the desirability of awarding the family home as part of equitable distribution or the right to live therein for reasonable periods to the spouse having custody of any children;

(11) the tax consequences to each or either party as a result of any particular form of equitable apportionment;

(12) the existence and extent of any support obligations, from a prior marriage or for any other reason or reasons, of either party;

(13) liens and any other encumbrances upon the marital property, which themselves must be equitably divided, or upon the separate property of either of the parties, and any other existing debts incurred by the parties or either of them during the course of the marriage;

(14) child custody arrangements and obligations at the time of the entry of the order; and

(15) such other relevant factors as the trial court shall expressly enumerate in its order.

"The division of marital property is in the family court's discretion and will not be disturbed absent an abuse of that discretion." *Doe v. Doe*, 370 S.C. 206, 213, 634 S.E.2d 51, 55 (Ct.App.2006) (citing *Craig v. Craig*, 365 S.C. 285, 290, 617 S.E.2d 359, 361 (2005)). "On appeal, this court looks to the overall fairness of the apportionment, and it is irrelevant that this court might have weighed specific factors differently than the family court." *Id.* at 213–14, 634 S.E.2d at 55 (citing *Greene v. Greene*, 351 S.C. 329, 340, 569 S.E.2d 393, 399 (Ct.App.2002)). "Even if the family court commits error in distributing marital property, that error will be deemed harmless if the overall distribution is fair." *Id.* at 214, 634 S.E.2d at 55.

 Marital property is defined as "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation ... regardless of how legal title is held...." S.C.Code Ann. § 20–3–630(A) (2014). Property acquired by either party before the marriage constitutes nonmarital property. S.C.Code Ann. § 20–3–630(A)(2) (2014). Nevertheless,

[p]roperty that is nonmarital when acquired may be transmuted into marital property if it becomes so commingled with marital property that it is no longer traceable, is titled jointly, or is used by the parties in support of the marriage

or in some other way that establishes the parties' intent to make it marital property.

*Wilburn v. Wilburn,* 403 S.C. 372, 384, 743 S.E.2d 734, 740 (2013) (citing *Trimnal v. Trimnal,* 287 S.C. 495, 497–98, 339 S.E.2d 869, 871 (1986)). "As a general rule, transmutation is a matter of intent to be gleaned from the facts of each case." *Johnson v. Johnson,* 296 S.C. 289, 295, 372 S.E.2d 107, 110 (Ct.App.1988). "The spouse claiming transmutation must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage." *Id.* at 295, 372 S.E.2d at 110–11. "Such evidence may include placing the property in joint names, transferring the property to the other spouse as a gift, using the property exclusively for marital purposes, commingling the property with marital property, using marital funds to build equity in the property, or exchanging the property for marital property." *Id.* at 295, 372 S.E.2d at 111. "The mere use of separate property to support the marriage, without some additional evidence of intent to treat it as property of the marriage, is not sufficient to establish transmutation." *Id.* at 295–96, 372 S.E.2d at 111. "A party claiming an equitable interest in property upon divorce bears the burden of proving the property is marital." *Wilburn,* 403 S.C. at 382, 743 S.E.2d at 740 (citing *Miller v. Miller,* 293 S.C. 69, 71 n. 2, 358 S.E.2d 710, 711 n. 2 (1987)). "If the party presents evidence to show the property is marital, the burden shifts to the other spouse to present evidence to establish the property's nonmarital character." *Id.* at 382, 743 S.E.2d at 740 (citing *Johnson,* 296 S.C. at 294, 372 S.E.2d at 110).

Husband and Wife owned, as individuals or through JFS, several pieces of property in Greenville County. Husband appeals the family court's equitable apportionment of four properties. Specifically, Husband argues the court erred in (1) awarding credit to Wife in the amount of $60,000 in relation to a purported down payment she made at 3 Trails End; (2) determining 39 Druid Street was nonmarital in nature and not apportioning it between the parties; (3) determining Husband was not entitled to any equity in 115 West Park Avenue; and (4) determining Husband was not entitled to any equity in 201 West Park Avenue. Husband also appeals the court's equitable apportionment of personal prop-

erty, including: (1) pieces of Kolische Art; (2) a Wellington Piano; and (3) Wife's wedding ring. Husband next appeals the court's equitable apportionment of the parties' financial assets, including the Elliott Davis retirement account and the 70/30 split. Finally, Husband appeals the court's order directing him to prepare the Qualified Domestic Relations Order (QDRO).

## a. Real Property

### 1. 3 Trails End

██ 3 Trails End was the marital home and was jointly titled. Wife sought a special equity in the amount of $60,000 because she maintained she used nonmarital assets in the form of a cashed-out insurance policy or her retirement account to make a down payment on the home. Wife asserted an email between her attorney and expert is consistent with her testimony at trial and proved she used $60,000 in nonmarital funds for the down payment on the home.[1] Husband testified the parties took out a second mortgage to pay the down payment on the house when they purchased it in Spring 2004. Husband also introduced a second mortgage in the names of both Husband and Wife for $58,000, which he asserted was the difference between the purchase price and the first mortgage on the house and twenty percent of the purchase price of the home. Wife asserted the second mortgage was taken to secure a home equity line similar to the home equity lines that encumbered her other properties.

The family court found credible Wife's contention that she made a substantial down payment on the residence from premarital funds and her premarital contribution should be taken into account in determining the percentage of the marital estate to which each party is equitably entitled upon distribution.

---

1. The email from Wife's attorney states: "The property is titled jointly to both parties with rights of survivorship. Purchase price was $290,000 and initial mortgage was $232,000 so the down payment/presumed initial special equity interest is $58,000." Then, Wife's expert responds: "Have you seen this email—I think 60,000 is probably a good number. She would have had some closing cost."

Husband asserts the court erred in finding Wife contributed $60,000 in premarital funds as a down payment on 3 Trails End and seeks rescission of the $60,000 consideration given to Wife. While this court has jurisdiction to find facts in accordance with its view of the preponderance of the evidence, we note this broad scope of review does not require this court to disregard the findings of the family court, which saw and heard the witnesses and is in a better position to evaluate credibility and assign comparative weight to the testimony. *See Strickland v. Strickland,* 375 S.C. 76, 82, 650 S.E.2d 465, 469 (2007). We find evidence supports the family court's determination as to Wife's credibility, and affirm the $60,000 consideration given to Wife.

## 2. 39 Druid Street

Before the couple married, Wife purchased a home at 39 Druid Street. The property was titled in Wife's name; however, Husband asserts the property was marital in nature and should have been apportioned by the court as such. Husband argues the family court erred in finding the property was not subject to equitable apportionment as marital property because (1) the parties used marital funds towards the maintenance, improvement, and increase of equity in the property; (2) the parties claimed the property on their jointly filed tax returns; (3) the court failed to follow transmutation precedent; and (4) alternatively, he is entitled to a special equity in the property.

Husband asserts the court found the parties regularly transferred marital funds in and out of the JFS bank account for personal and family uses. Thus, Husband asserts the court should have found the JFS account was used to pay for numerous expenses for the Druid Street property as shown by the check ledger for the account. Husband also asserts the parties claimed the Druid Street Property on their joint federal income tax returns from 2005–2011. He maintains that although the property lost money each year, the parties benefited from the losses by decreasing their overall taxable income and increasing their refunds.

Husband additionally asserts the court failed to follow transmutation precedent, and this case is unlike *Smallwood v.*

*Smallwood,* 392 S.C. 574, 580–81, 709 S.E.2d 543, 546 (Ct.App. 2011), because the property had losses every year and required money from marital assets to cover expenses. He argues this case is more like *Pittman v. Pittman,* 407 S.C. 141, 150, 754 S.E.2d 501, 506 (2014), because his role in the rental property business was "pervasive and ubiquitous," which lends support to the transmutation of the Druid Street property into marital property. He asserts this case is also similar to *Edwards v. Edwards,* 384 S.C. 179, 185, 682 S.E.2d 37, 40 (Ct.App.2009), because he was not paid for his work with all the rental properties and he and Wife built equity in the Druid Street property through the use of marital funds to pay down the debt and improve the property. He further contends this case is like *Jenkins v. Jenkins,* 345 S.C. 88, 99, 545 S.E.2d 531, 537 (Ct.App.2001), because he worked to maintain and improve the property. Additionally, he cites *Canady v. Canady,* 296 S.C. 521, 524, 374 S.E.2d 502, 504 (Ct.App.1988), and *Wyatt v. Wyatt,* 293 S.C. 495, 497, 361 S.E.2d 777, 779 (Ct.App.1987), as support for his argument that the property transmuted into martial property when they jointly discharged the indebtedness for the property.

Alternatively, Husband argues he is entitled to a special equity in the Druid Street property because he managed, maintained, and improved the property. He asserts "[i]t is well-established that a spouse has an equitable interest in appreciation of property to which he contributed during the marriage, even if the property is nonmarital." *Jenkins,* 345 S.C. at 99, 545 S.E.2d at 537. He states he managed the property for nine years and was never paid for his work. He states he also performed or oversaw the performance of maintenance and made improvements to the house without compensation. Husband asserts the Druid Street property was worth $103,000 and encumbered with debt of $124,600 at the beginning of their marriage. He asserts the property is now worth $150,000 with debt of $87,136, which creates positive equity of $62,864. Therefore, he maintains he possesses an equitable interest in the increase in equity that should be included in the marital estate for inclusion in the equitable apportionment calculation.

Wife argues JFS managed all of the rental property, regardless of how it was titled. As such, she asserts the

revenue generated by the Druid Street property was commingled with revenue generated by the other rental properties. Wife does not claim this revenue is non-marital property. She claims Husband had the burden of proving the real property was transmuted into marital property, but he failed to prove where the JFS funds came from, whether from rental income from the Druid Street property, Wife's other non-marital assets, or from the parties' marital assets. Further, she asserts the parties' tax returns show the revenue from the Druid Street property was greater than the actual costs associated with the property. She maintains that although there were cash infusions into the JFS account from the parties' joint account, the money was not used toward the Druid Street expenses.

Wife further argues Husband appears to contend his mismanagement of the parties' rental properties, leading them to lose money, caused the transmutation of the Druid Street property into marital property because it entitled the parties to a larger tax return. She claims allowing the parties' tax deductions to affect the marital or non-marital nature of the property would make it nearly impossible for any spouse owning non-marital property to file joint tax returns.

Wife argues the family court properly followed precedent. She asserts this case is analogous to *Smallwood.* In *Smallwood,* the court recognized the wife's contribution of time and labor to the rental properties, but found the contributions were insufficient to prove transmutation. 392 S.C. at 580, 709 S.E.2d at 546. Wife maintains Husband was not required to manage the lease for the property because it had the same tenant for eight or nine years prior to trial and no substantial improvements were made to the property.

Wife further argues this case is distinguishable from *Pittman.* As in *Pittman,* Husband assisted with the non-marital property; however, unlike in *Pittman,* here the parties did not use marital funds to discharge indebtedness on the Druid Street property. 407 S.C. at 152, 754 S.E.2d at 507. Wife asserts the funds came from the rent generated by the property. Further, Husband's role in maintaining the property was not as "pervasive and ubiquitous" as the wife's role in running the business in *Pittman* because the property was

leased throughout the marriage to the same tenant and no improvements were made to the property.

Wife maintains *Edwards* is also distinguishable from this case because in *Edwards*, the parties used the produce stand in support of the marriage and "demonstrated their intent to treat it as marital property"; thus, it was transmuted into marital property. 384 S.C. at 185, 682 S.E.2d at 40. Whereas here, although the parties did use some of the funds that passed through JFS to support their marriage, they did not use the rental income to the extent the husband and wife did in *Edwards*. Here, the parties' main source of income was Wife's salary from her dental practice. Finally, Wife testified she did not consider the property to be marital property.

In *Canady*, there was evidence the husband considered the non-marital property transmuted because throughout the trial, he referred to their home as the marital residence and admitted the wife probably retained an equitable interest in the property. 296 S.C. at 524, 374 S.E.2d at 504. Also, in *Wyatt*, the husband and wife made substantial improvements to the home and land, and the couple lived in the home for ten of their sixteen years of marriage. 293 S.C. at 497, 361 S.E.2d at 779.

Wife asserts Husband's argument that his management and maintenance of JFS transmuted the Druid Street property into marital property does not conform with precedent. She asserts Husband is not entitled to a special equity interest in the property because his management did not increase the value of the property. In *Arnal v. Arnal*, 363 S.C. 268, 294–95, 609 S.E.2d 821, 835 (Ct.App.2005), the court held the husband did not gain a special equity interest in the property despite the use of his landscaping designs and physical labor because his labor did not create any appreciation in the value of the property. Here, Wife asserted Husband's only contribution was he oversaw maintenance on the property and the property was not maintained adequately. She further states Husband's efforts did not increase the actual value of the property.

Husband argues this case is different from the circumstances in *Fitzwater v. Fitzwater*, 396 S.C. 361, 721 S.E.2d 7 (Ct.App.2011). In *Fitzwater*, this court affirmed the family

court's finding that the husband's nonmarital property was not transmuted. *Id.* at 369, 721 S.E.2d at 11. The parties in *Fitzwater* never used the "property as a marital home, never placed the property in [the wife's] name, and [the husband] never made any substantial improvements to the property during the marriage." *Id.* at 368, 721 S.E.2d at 11. While the parties paid the mortgage payments from a joint bank account, the wife was never an obligor. *Id.* Also, although the husband in *Fitzwater* mortgaged the property during the marriage, the proceeds were used to pay for improvements to nonmarital property. *Id.* We find the circumstances of this case to be similar to those of *Fitzwater*.

Here, the family court found that "[a]lthough Husband assisted with the managing and maintenance of the property, there is no evidence whatsoever that Wife ever regarded [39 Druid Street] as the common property of the marriage, nor is there probative evidence that the parties used the property exclusively for marital purposes, that they commingled the property with marital property, or that they used marital funds to build equity in the property." Thus, the court determined the property had not been transmuted. After carefully reviewing the record, we agree with the family court's determination that the Druid Street property was not transmuted.

### 3. 115 West Park Avenue and 201 West Park Avenue

Husband argues he is entitled to at least a 50/50 split of the equity in the 115 West Park Avenue property and the 201 West Park Avenue property; however, he did not raise this issue in his motion seeking alteration and/or amendment of the final order. Therefore, the argument is not preserved for our review. *See Doe*, 370 S.C. at 212, 634 S.E.2d at 54 ("To preserve an issue for appellate review, the issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court.").

### b. Personal Property

Husband argues the family court's order should be revised to reflect that the Kolische Art is a marital asset subject to equitable apportionment because Wife did not prove

by a preponderance of evidence the art was owned before the marriage. He also argues the one piece given to him was actually a gift for his son, who should receive it. Wife testified the Kolische pieces should not be included in the marital estate because she owned two of the pieces prior to the marriage and the third piece was a gift from the gallery owner to the parties' son. She asserts Husband did not contradict her testimony.

Husband also argues the family court erred in valuing the Wellington piano at $1,000. He asserts the family court order should be adjusted to reflect that the piano has a market value of $6,500, which was the amount Wife valued it on her Exhibit 8. Wife testified the piano was worth $1,000. She based this on how much she paid for it and her research of its value online.

Finally, Husband argues the family court order should be revised so that Wife receives her wedding ring. Wife contends Husband valued the ring at $12,000, and it is not worth that much to her, so she would prefer the ring be assigned to Husband if it was valued at that price.

After carefully reviewing the record, we agree with the family court's determination of the division of this personal property. *See id.* at 213, 634 S.E.2d at 55 ("The division of marital property is in the family court's discretion and will not be disturbed absent an abuse of that discretion." (citing *Craig,* 365 S.C. at 290, 617 S.E.2d at 361)).

## c. Financial Assets

Husband argues the family court order should be adjusted to reflect Wife is to receive the Elliott Davis retirement account at a value of $59,989.74 because she removed $11,000 from the account shortly before the date of filing. Wife testified she removed the funds from the account. Husband's Exhibit 2 also shows three wire transfers from the account in the total amount of $11,000. Husband asserts that by giving Wife the account at the post-transfers value of $49,897, Wife received a contribution of $11,000 towards her attorney's fees and costs, which is in conflict with the finding that each party should be solely responsible for his or her own fees and costs. Wife asserts the divorce action was filed on

August 30, 2012; therefore, that is the preferred date of valuation for the marital assets. *See Burch v. Burch,* 395 S.C. 318, 325, 717 S.E.2d 757, 761 (2011) ("In South Carolina, marital property subject to equitable distribution is generally valued at the divorce filing date."). Thus, she requests this court affirm the judgment of the family court in finding the retirement account should be valued as of the date of the filing.

Husband also asserts the family court's 70/30 split should be reversed and the order revised to a 50/50 split. Husband argues the court "hammered" him in dividing the assets and debts, and he has been "saddled with tens of thousands of dollars in attorney's fees and costs to pay." Husband asserts under the final order, Wife receives a total of $1,064,145 and he receives $185,018.

Husband cites to *Doe,* admitting the parties in this case were not married as long as the couple in *Doe;* however, asserting Husband and Wife had a long term partnership, which included having a child and the acquisition of substantial property they treated as marital. *See Doe,* 370 S.C. at 214, 634 S.E.2d at 55. He asserts that like the wife in *Doe,* he subordinated an established career to support Wife's professional pursuits and operated in an unpaid capacity by managing the real estate titled to Wife or JFS. *See id.* at 215, 634 S.E.2d at 56. Further, he maintains he provided a substantial share of the care for the couple's child. Finally, he asserts his adultery does not rise to the level of the wife in *Doe* because his adultery was after Wife filed for divorce. *See id.* Husband asserts the family court should adopt the same analysis and revise the 70/30 division to the more equitable division of 50/50.

Husband further asserts the family court did not consider all and/or misapprehended certain factors under § 20-3-620. Specifically, he argues the court erred in considering subsections 1, 3, 4, 6, 7, and 11. Under subsection 1, husband asserts a marriage approaching ten years can support a 50/50 division. Under subsection 3, he argues the court incorrectly found Wife was responsible for 92.5% of the parties' total taxable income during the marriage, and "inappropriately treated Husband's committed and compensation-free efforts to

the rental properties as an afterthought." As to subsection 4, Husband asserts Wife earns substantially more income than he and has the ability to earn substantially more than he can. Husband argues that at trial Wife claimed her income from employment was lower than it had been during the marriage and what it was when she commenced the action, but she presented no evidence explaining the decrease. Further, Husband argues the court's statement that both parties have a substantial opportunity for future acquisition of capital assets is true for Wife but false and without support for him. Under subsection 6, Husband asserts the order addressed whether a high school degree is sufficient for his current job, which is irrelevant; however, the final order is silent on income potential. As to subsection 11, Husband argues the court did not properly consider the tax consequences. He asserts the division percentage should be adjusted to a 50/50 division to reach an equitable result because the final order leaves him in a severely crippled financial state.

Wife asserts this case is different from *Doe* because in *Doe* the parties were married for thirty-two years and the wife had ceased working to care for the parties' daughter; thus, the court found a 70/30 division was not equitable and a 60/40 division was more appropriate. *See id.* at 216, 634 S.E.2d at 57. Here, Husband and Wife were only married for seven years as of the date of filing. Also, Wife contributed more than eighty-four percent of the parties' income, yet she continued to be the primary caregiver for the parties' son and was responsible for cleaning the house and bathrooms, doing the dishes and laundry, and cooking dinner. Further, she asserts she brought significant non-marital property into the marriage and her wealth decreased during the marriage. Therefore, Wife asserts the 70/30 equitable division of the marital estate was well within the discretion of the family court.

After carefully reviewing the record, we find the family court's determination of the division of the retirement account and the 70/30 split was appropriate and not an abuse of discretion. *See id.* at 213, 634 S.E.2d at 55 ("The division of marital property is in the family court's discretion and will not be disturbed absent an abuse of that discretion." (citing *Craig,* 365 S.C. at 290, 617 S.E.2d at 361)).

### d. QDRO

Husband argues the order should be reversed to require Wife to prepare the QDRO at her expense. Husband asserts he does not have access to the Elliott Davis account or the information to prepare a QDRO, whereas Wife has more resources to pay for one. Wife asserts Husband should be responsible for drafting the QDRO because he has the strongest financial incentive to quickly prepare the order and follow through with the qualification process. Also, she claims allowing Husband to draft the QDRO will enable him to include greater protection in the language of the order. We find no error in directing Husband to prepare the QDRO.

## II. Attorney's Fees

Husband argues the family court erred in ordering Wife and Husband to be responsible for his and her own attorney's fees. We disagree.

"An award of attorney's fees rests within the sound discretion of the trial judge and should not be disturbed on appeal unless there is an abuse of discretion." *Patel v. Patel,* 359 S.C. 515, 533, 599 S.E.2d 114, 123 (2004) (citing *Ariail v. Ariail,* 295 S.C. 486, 489, 369 S.E.2d 146, 148 (Ct.App.1988)). The family court should consider the following factors when determining whether to award attorney's fees: "(1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; [and] (4) effect of the attorney's fee on each party's standard of living." *E.D.M. v. T.A.M.,* 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). To determine the amount of an award of attorneys' fees, the court should consider: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; [and] (6) customary legal fees for similar services." *Glasscock v. Glasscock,* 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

Husband argues the following sentence from the family court's final order should be stricken: "Wife prevailed on a majority of the transmutation claims made by Husband and achieved a favorable 70%–30% division of the net marital

estate." Husband asserts he proved the 115 West Park Avenue was transmuted. He also asserts Wife's premarital down payment at 3 Trails End was transmuted, and he has demonstrated 39 Druid Street was transmuted, or in the alternative, the subject of special equity in his favor. Thus, he argues Wife did not prevail on a majority of the transmutation claims and the 70/30 division was in error.

Husband also argues the following sentence from the family court's final order should be stricken: "Wife spent considerable fees and costs relating to Husband's contemptuous conduct toward her, and in defending his unsuccessful contempt action against her." Husband asserts the fees and costs related to contempt in this action are separate and distinct from the underlying divorce action and should not be factored into the consideration of fees and costs.

Finally, Husband argues he is entitled to attorney's fees because (1) he defeated the fault-based ground of habitual drunkenness; (2) he received by consent an award of custody and visitation that more closely resembled what he sought in his pleadings; (3) he successfully proved transmutation; and (4) the vast majority of the assets were valued at his numbers.

Wife asserts each party earns an above-average income, and Husband is capable of paying his own attorney's fees and costs. She maintains the custody of the parties' minor son was the primary concern in this case, and the court awarded her primary custody and visitation similar to what she originally sought in her complaint. Further, the court awarded her child support greater than that awarded in the temporary order. Thus, Wife prevailed on the custody issue. She further argues she prevailed on the equitable division of the parties' assets, including the Druid Street property and her non-marital contribution for the down payment on the former marital residence. Wife argues Husband's financial condition has significantly improved during his marriage to Wife. She asserts that prior to marriage, he earned $72,000 annually, owned a vehicle with significant debt, was living with his parents, and did not have any retirement or savings. Whereas, after the divorce, he earns $71,000 annually, owns his own home, has a retirement account worth $70,000, and owns $84,615 in liquid assets and personal property. Finally, she

argues Husband's above-average income and improved financial condition will allow him to enjoy a comfortable standard of living after paying his attorney's fees. We find no error in requiring the parties to pay his and her own attorney's fees.

## CONCLUSION

Accordingly, the family court's order is

**AFFIRMED.**

GEATHERS and McDONALD, JJ., concur.