**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Evelyn Denise Hemphill, Appellant,

v.

Kenneth Bernard Hemphill, Respondent.

Appellate Case No. 2018-001141

———————

Appeal From Chester County
Coreen B. Khoury, Family Court Judge

———————

Unpublished Opinion No. 2021-UP-141
Submitted March 1, 2021 – Filed April 28, 2021

———————

**AFFIRMED**

———————

Evelyn Denise Hemphill, of Rock Hill, pro se.

April Dawn Porter, of Law Office of April D. Porter,
P.C., of Chester, for Respondent.

———————

**PER CURIAM:** Evelyn Denise Hemphill (Mother) appeals an order from the family court denying her request to modify custody of her minor child (Child) based on a substantial change in circumstances. On appeal, Mother raises twenty-six issues. We affirm pursuant to Rule 220(b), SCACR.

Mother's issues are as follows:

(1) Was it an error of the family court or violation of any rules or Mother's constitutional rights when the family court issued orders and judgments from a default 2010 Divorce Decree that was procured by fraud?

(2) Was it an error of the family court or violation of any rules of Mother's constitutional rights when the family court entered judgments and orders against Mother when Donald Brown (Attorney Brown) failed to appear for the first temporary hearing for the divorce, leaving Mother legally defenseless?

(3) Was there a violation of any rules or Mother's constitutional rights when the family court continued to proceed with the trial during the divorce action and failed to declare a mistrial when Mother made the family court aware of the extrinsic fraud and misconduct that occurred in the beginning of the divorce proceedings that were heard in the family court?

(4) Was it an error of the family court or violation of any rules to issue a default 2010 Divorce Decree when Attorney Brown and Rosalee Hix Davis (Attorney Davis) committed extrinsic fraud against Mother?

(5) Were the South Carolina Rules of Civil Procedure not followed when Mother requested to be relieved from the orders under the grounds of newly discovered evidence and fraud, Rule 60 Relief from judgment or order, when the motion for relief from order was filed by Mother on March 21, 2018, and Mother's affidavit was filed in the family court on March 21, 2018?

(6) Were there violations of any rules or Mother's constitutional rights when Mother's former attorneys and Kenneth Bernard Hemphill's (Father's) attorney influenced the family court to enter order and judgments against Mother that were all procured by fraud?

(7) Were the actions of all of the attorneys, family court judges, and other officers of the court not extrinsic fraud?

(8) Did the family court issue a valid and legal 2010 Divorce Decree according to the South Carolina Rules of Civil Procedure?

(9) Was there a violation of any rules or of Mother's constitutional rights when she was denied custody of Child and property when orders and judgments were entered

by the family court based upon fraudulent actions of Father along with fraud and misconduct orchestrated by other officers of the court?

(10) Was there a violation of any rules or of Mother's or Child's constitutional rights when the family court dismissed a custody action brought forth by Mother on November 18, 2014, due to the 365-day rule because O. Cyrus Hinton (Attorney Hinton) failed to contact the court within a one-year time period?

(11) Was the second order of custody that was issued by the family court not procured by fraud when Attorney Hinton stole approximately $4,500 from Mother without rendering legal services to her?

(12) Was it a violation of any rules or of Mother's constitutional rights or misconduct when Father requested the family court issue a second psychological exam to be performed on Mother when Mother complied with the first court order for the first basic psychological exam?

(13) Was Father in violation of any rules when he questioned the credentials of the first counselor, who was Dr. Wayne Schaefer, after the test results and the sworn deposition of Dr. Schaefer were completed, to this date Father has failed to produce evidence disproving Dr. Schaefer's credentials?

(14) Was it unethical and misconduct for Father to request Mother be court ordered twice for psychological exams that Mother had to pay for placing Mother in a financial hardship using trickery and schemes?

(15) Was it obstruction of justice when teacher Lynn Pharr of Lewisville Middle School falsified the Vanderbilt ADHD Diagnostic Teacher Rating Scales needed by Child's counselor to determine what treatment was needed for Child?

(16) Was J. Creighton Hayes (Attorney Hayes) in violation of any rules or Mother's constitutional rights when Attorney Hayes failed to challenge the request for Mother's second psychological exam knowing that Mother had no significant psychological issues that would prevent her from rearing Child?

(17) Was it unethical and/or misconduct or in violation of any other rules for Father's attorney to use her law license issued by the State of South Carolina to block badly needed counseling services for Child?

(18) Were there violations of sections 63-3-810 to -870 of the South Carolina Code (2010) or any other rules when "Guardian ad Litems Attorney Hope Rainey, Charlotte Mooney, and Viva Halcom" neglected their responsibilities to represent Child's best interest by not conducting independent, balanced, and impartial investigations?

(19) Were there violations of the duty of candor toward the tribunal or any other violations when Father's attorney, Attorney Brown, Attorney Davis, Attorney Hinton, and Attorney Hayes prejudiced the administration of justice?

(20) Was it not perjury when Father had his key witness—Curtis Feaster, Mother's former paramour—produce a fraudulent affidavit and present the fraudulent affidavit to the family court?

(21) When the family court failed to relieve Mother from the judgment/order, failed to set aside the judgment for fraud upon the court, or failed to declare a mistrial once the fraud was brought to the family court's attention, did the family court violate any Rules of Civil Procedure or any other rules or Mother's constitutional rights?

(22) When the family court entered a decision of final custody that was procured by fraud upon the court and in essence cannot be a decision and cannot become final did the family court violate the Rules of Civil Procedure or Mother's constitutional rights?

(23) When the family court denied Mother custody of Child in the March 21, 2018 temporary order based on the 2010 Divorce Decree that was procured by fraud upon the court, did the family court violate the South Carolina Rules of Civil procedure or any other rules or Mother's constitutional rights?

(24) Was it an error of the family court or a violation of any rules or Mother's constitutional rights when the family court issued absolutely null, without legal efficacy, ineffectual orders/judgments that bound Mother to comply with no legal force and effect whatsoever, and was the family court capable of confirming, ratifying, or enforcing the order/judgments in any manner or to any degree?

(25) Were Mother's rights concealed from her by officers of the court through no fault of her own, and was the whole case fraudulent from the beginning of the divorce action in 2009?

(26) Was it an error of the family court or violation of any rules or violation of Mother's constitutional rights when the family court denied several requests made by Mother for restraining orders against Father, resulting in Father having full access to Mother, attacking Mother in Mother's home with Child and Mother's grandson present?

First, we find issues 2, 10, and 26 are not proper for appellate review because they pertain to unappealed orders from prior cases between the parties. *See Bakala v. Bakala*, 352 S.C. 612, 632, 576 S.E.2d 156, 166 (2003) (holding that a family court judge could not overrule the prior unappealed order of another family court judge because it had become law of the case); *In re Morrison*, 321 S.C. 370, 372 n.2, 468 S.E.2d 651, 652 n.2 (1996) (noting that an unappealed ruling becomes the law of the case and precludes further consideration of the issue on appeal).

Second, we find Mother did not preserve issue 18 for appellate review because she raised it for the first time on appeal. *See Doe v. Doe*, 370 S.C. 206, 212, 634 S.E.2d 51, 54 (Ct. App. 2006) ("To preserve an issue for appellate review, the issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court.").

Third, this court does not have jurisdiction over issues 14, 16, 17, and 19 because they relate to allegations a lawyer has committed misconduct. *See* Rule 3(b), RLDE, Rule 413, SCACR ("The Commission [on Lawyer Conduct] shall have jurisdiction over all allegations that a lawyer has committed misconduct or is incapacitated.").

Fourth, to the extent Mother contends in issue 24 that the family court lacked subject matter jurisdiction, we hold the family court has jurisdiction over custody disputes. *See Dove v. Gold Kist, Inc.*, 314 S.C. 235, 237-38, 442 S.E.2d 598, 600 (1994) (providing "[s]ubject matter jurisdiction is 'the power to hear and determine cases of the general class to which the proceedings in question belong'" (quoting *Bank of Babylon v. Quirk*, 472 A.2d 21, 22 (Conn. 1984))); S.C. Code Ann. § 63-3-530 (2010 & Supp. 2020) (providing the family court has exclusive jurisdiction over custody disputes).

Fifth, we find Mother failed to provide this court with a sufficient record upon which this court could conduct an intelligent review of issues 12, 13, 15, and 26. *See Taylor v. Taylor*, 294 S.C. 296, 299, 363 S.E.2d 909, 911 (Ct. App. 1987) ("The burden is on the appellant to furnish a sufficient record on appeal from which this court can make an intelligent review."). The record on appeal is unclear

whether Mother objected to the second psychological evaluation.  Mother did not include in the record on appeal the transcript from the hearing in which the psychological evaluation was discussed and from which the family court ordered Mother to submit to the second psychological evaluation.  Mother also did not include in the record on appeal the transcript from the four-day final hearing; thus, this court is unable to review any issue regarding Dr. Schaefer's credentials or any issue related to Mother's assertions that one of Child's teachers obstructed justice by falsifying the results of the Vanderbilt ADHD Diagnostic Teacher Rating Scale, which she alleges prohibited Child's counselor from determining the appropriate treatment for Child.

Sixth, we find the family court did not abuse its discretion by denying Mother's Rule 60(b), SCRCP, motion.  *See Sanders v. Smith*, 431 S.C. 605, 611, 848 S.E.2d 604, 607 (Ct. App. 2020) ("The family court has discretion in deciding whether to grant or deny a motion made pursuant to Rule 60(b) and we review such decisions using an abuse of discretion standard.").  Initially, because issues 1, 3, 4, 6, 11, 20, and 25 relate to Mother's first and second custody cases, which became final in 2010 and 2014 respectively, we find the family court could not consider any argument of fraud related to the first or second custody case because Mother filed the Rule 60(b)(3), SCRCP, motion more than a year after the judgments in those cases.  *See* Rule 60(b), SCRCP ("The [Rule 60] motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken.").  Although issues 5, 6, 7, 9, 21, and 22 relate to the family court's March 19, 2018 order—thus, Mother's March 21, 2018 Rule 60(b) motion was timely filed—we find the family court did not abuse its discretion by denying Mother's motion as to these issues because Mother's allegations do not amount to extrinsic fraud.  *See Chewning v. Ford Motor Co.*, 354 S.C. 72, 81, 579 S.E.2d 605, 610 (2003) ("Extrinsic fraud is 'fraud that induces a person not to present a case or deprives a person of the opportunity to be heard.  Relief is granted for extrinsic fraud . . . because the fraud prevented a party from fully exhibiting and trying his case . . . .'" (quoting *Hilton Head Ctr. of S.C. v. Pub. Serv. Comm'n*, 294 S.C. 9, 11, 362 S.E.2d 176, 177 (1987))).  In her motion, Mother alleged Attorney Hayes had committed extrinsic fraud by (1) failing to submit documentation to the family court regarding her experience with Attorney Davis, (2) failing to subpoena information on the amount of time Father had worked the last eight years, and (3) filing a proposed parenting plan that stated Mother was requesting joint custody instead of the sole custody she contracted with him to seek.  She also asserted the March 2018 final order was "obtained by fraudulent pretenses" because her attorneys had not protected her legal rights and

had stolen money from her without providing services.  Based on the foregoing, we find the family court did not abuse its discretion.[1]

**AFFIRMED.**[2]

**KONDUROS, GEATHERS, and MCDONALD, JJ., concur.**

---

[1] Although on appeal Mother appears to solely argue against the family court's custody ruling on the ground of fraud, to the extent Mother argues the family court erred by denying her request for custody pursuant to a substantial change in circumstances, this court cannot review the merits of the custody ruling because Mother failed to provide this court with a sufficient record upon which it can make an intelligent review of this issue.  *See Taylor*, 294 S.C. at 299, 363 S.E.2d at 911 ("The burden is on the appellant to furnish a sufficient record on appeal from which this court can make an intelligent review.").  Specifically, the record on appeal does not contain the transcript from the four-day custody hearing.
[2] We decide this case without oral argument pursuant to Rule 215, SCACR.