**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Sara Katherine Waldrop Ridgeway, Respondent,

v.

Ralph Riggie Ridgeway, Appellant.

Appellate Case No. 2019-000021

---

Appeal From Pickens County
Karen S. Roper, Family Court Judge

---

Unpublished Opinion No. 2022-UP-112
Heard November 3, 2021 – Filed March 16, 2022

---

**AFFIRMED**

---

Oscar W. Bannister, of Bannister, Wyatt & Stalvey, LLC, of Greenville, for Appellant.

Robert Scott Dover, of Law Offices of Scott Dover, of Pickens, for Respondent.

---

**PER CURIAM:** Appellant (Husband) argues the family court erred by failing to give sufficient weight to the fault factor in its equitable division of the parties' marital assets because Respondent (Wife) ended their forty-eight-year marriage to pursue another relationship. We disagree and affirm.

**Facts and Procedural History**

The parties attended high school together in Greenville and began dating when Wife was sixteen years old and Husband was seventeen. By the time Husband was a high school senior, the couple dated exclusively. Following graduation, Husband attended Mars Hill College in North Carolina.

Although the parties were first engaged to be married when Wife was a senior in high school, she broke the engagement because despite her desire to attend college, Husband "couldn't agree" that college was something Wife "needed to do." Wife completed a two-year degree at Montreat-Anderson Junior College and then took a job as an executive secretary to the director of engineering at Dan River Woodside.

The parties subsequently reengaged and were married on December 28, 1968. Wife gave up her position at Dan River Woodside, moved to Mars Hill, and took a job at a law firm in Asheville. Wife testified she was solely responsible for the parties' financial support at that time, including paying for Husband's last three semesters of college. While Husband acknowledged Wife paid for some of his college tuition, he testified only one semester remained after they married.

Husband graduated, and the parties moved back to Greenville, where they resided until 1990. Wife returned to her job and "progressed in her field" before eventually obtaining a commercial real estate license. She worked as a licensed realtor until the parties' only child (Daughter) was born in 1977. Thereafter, Wife had several temporary or contract job assignments with U.S. Shelter Corporation, Bowater, and Fluor Daniel. When Daughter was in eleventh grade, Wife went to real estate school to obtain her residential real estate license and then worked primarily with residential listings.

Husband began his career at South Carolina National Bank, which hired him to enter the management training program. He subsequently took a job at Southern Bank & Trust, where he "rose to the level of senior lender in Greenville and . . . of course vice president and main office manager." Husband then worked at American Federal, where he helped open a commercial bank function within the savings and loan. Husband was later presented with the opportunity to help start Peoples National Bank (PNB) and other companies in Easley. Although Wife did not want to move to Easley, she ultimately acquiesced. Husband became president of PNB and subsequently the chief financial officer of the holding company for other banks formed by PNB. Husband retired in 2011.

Following the parties' move to Easley—a difficult transition for both Wife and Daughter—Wife continued in her role as a homemaker and participated in activities that furthered Husband's career. Husband testified he would have been just as successful in life without Wife's efforts stating, "she was a great help along the way but so are other women, you know . . . it's not a hard thing to be a bank president's wife." Before that time, Wife worked with Husband to do what was necessary to financially support the family; however, after Daughter was born, Wife assumed a mostly one-sided responsibility for Daughter's care and the maintenance of the parties' home and property while Husband controlled the family's financial decisions and social calendar.

Husband and Wife agreed that Wife provided the majority of the indirect contributions in the home. Wife testified she was responsible for cleaning their home, washing their clothing, and described herself as the "chief cook and bottle washer." She volunteered at Daughter's school and participated in various activities benefitting Daughter. While the parties hired individuals to assist Wife with certain aspects of the yard, she was the primary landscaper. Wife did not have any help inside the home until Daughter was in high school. However, the parties have had someone to clean bimonthly since then "to do all the heavy lifting."

In January 2015, Wife met a man at a shag club in North Myrtle Beach. According to Wife, the two conversed that evening but did not talk again for nine months. In September 2015, he emailed Wife suggesting they meet and share a dance, to which Wife agreed. Thereafter, they talked on the phone and exchanged many texts and emails. However, Wife testified the pair did not see each other again until November 2016, when they went to lunch with two other couples.

Wife admitted she made the "final decision" to separate from Husband in the early part of 2017, but testified she did not participate in any extramarital misconduct until after she filed a motion for temporary relief and a summons and complaint in the family court on February 10, 2017. After filing pleadings asking for, among other things, temporary support and maintenance, the division of marital assets, and alimony, Wife withdrew over $310,000 from the parties' joint bank accounts, left the marital home, and moved to the parties' beach house. She did not tell Husband or Daughter she was leaving or why.

On March 3, 2017, Husband hired a private investigator, who subsequently observed Wife and the man "meet on more the one occasion, share breakfast, lunch and dinner, travel together to a planned party, hold hands, kiss and share time

together in a hotel room . . . on two occasions." When confronted with this information, Wife withdrew her claim for alimony. Wife stipulated to post-separation adultery. At trial, Wife admitted to an emotional affair but denied any physical involvement outside the marriage prior to February 10, 2017. Likewise, Husband testified he had no evidence that Wife had committed adultery as of the time of the separation or filing of this action.

On April 17, 2017, Husband filed an answer, counterclaim, and return to the motion for temporary relief, noting Wife's adultery, denying she was entitled to temporary support or alimony, and admitting she was entitled to an equitable division of the marital assets.

The parties subsequently entered a consent order regarding certain issues raised in the motion for temporary relief and went to trial on the remaining matters on June 11, 2018. The family court granted Husband a divorce on the ground of adultery by decree dated August 1, 2018. The family court calculated an equitable apportionment split of 50.5% to Husband and 49.5% to Wife, with assets of $1,646,810 awarded to Husband and $1,612,864 awarded to Wife.

Wife filed a Rule 59(e), SCRCP, motion to reconsider regarding the in-kind allocation of certain personal property. Husband filed a Rule 59(e) motion, addressing the calculation and allocation of the marital debts. However, at the October 9, 2018 motion hearing, Husband withdrew this motion. The family court issued an amended divorce decree on December 7, 2018, which divided the marital estate by specific items. Husband again received 50.5% of the marital estate and Wife received 49.5%. Husband filed a notice of appeal on January 4, 2019.

**Law and Analysis**

"Appellate courts review family court matters de novo, with the exceptions of evidentiary and procedural rulings." *Stone v. Thompson*, 428 S.C. 79, 91, 833 S.E.2d 266, 272 (2019). However, this broad scope of review does not require the appellate court to disregard the fact the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis v. Lewis*, 392 S.C. 381, 385–86, 709 S.E.2d 650, 651–52 (2011). "Moreover, consistent with our constitutional authority for *de novo* review, an appellant is not relieved of his burden to demonstrate error in the family court's findings of fact." *Id*. at 392, 709 S.E.2d at 655.

"When distributing marital property, the family court should consider all fifteen factors set forth in the Code." *Craig v. Craig*, 365 S.C. 285, 290, 617 S.E.2d 359, 361 (2005). The family court "must give weight in such proportion as it finds appropriate to all of the following factors" in apportioning marital property: (1) the duration of the marriage; (2) marital misconduct or fault of the parties; (3) the parties' contributions; (4) the income of each spouse; (5) the health of each spouse; (6) each spouse's need for training or education; (7) the nonmarital property of each spouse; (8) the parties' retirement benefits; (9) the existence of a spousal support award; (10) the use of the marital home; (11) any tax consequences; (12) the existence of any support obligations; (13) any lien or encumbrances on marital property; (14) child custody arrangements and obligations; and (15) such other relevant factors as the court enumerates in its order. S.C. Code Ann. § 20-3-620(B) (2014). "Although statutory factors provide guidance, there is no formulaic approach for determining an equitable apportionment of marital property." *Lewis*, 392 S.C. at 391, 709 S.E.2d at 655. "On appeal, this court looks to the overall fairness of the apportionment . . . ." *Greene v. Greene*, 351 S.C. 329, 340, 569 S.E.2d 393, 399 (Ct. App. 2002).

1. Upon finding clear and convincing evidence of Wife's adultery, the family court specifically considered Wife's marital misconduct, noting "fault does not justify a severe penalty in making a division of marital property." *Rampey v. Rampey*, 286 S.C. 153, 156, 332 S.E.2d 213, 214 (Ct. App. 1985). However, fault "is a factor the court may consider in determining the equities between spouses." *Id*. The evidence in the record reflects that Wife's misconduct occurred several years after the parties retired, and according to Wife, ensued post-filing. Although her misconduct clearly contributed to the breakup of the marriage, there is no evidence that this misconduct otherwise affected the economic circumstances of the parties. *See* § 20-3-620(B)(2) ("In making apportionment, the court must give weight in such proportion as it finds appropriate to . . . marital misconduct or fault of either or both parties, whether or not used as a basis for a divorce as such, if the misconduct affects or has affected the economic circumstances of the parties, or contributed to the breakup of the marriage . . . ."). The apportionment statute vests in the family court the discretion—subject to the appellate court's de novo review—to decide what weight should be assigned to the various apportionment factors, including marital misconduct. *See e.g.*, *Widman v. Widman*, 348 S.C. 97, 111, 557 S.E.2d 693, 700 (Ct. App. 2001) ("The statute vests in the family court the discretion to decide what weight should be assigned to the various factors."); *Smith v. Smith*, 294 S.C. 194, 201, 363 S.E.2d 404, 408 (Ct. App. 1987) (holding the family court "acted properly" in "expressly considered[ing] marital misconduct" but declining to give it any weight because "the wife's misconduct

occurred well after the parties separated . . . and there is no evidence that [her] misconduct placed any extra financial burden on the husband during the marriage"). Moreover, we find Husband failed to satisfy to this court that the preponderance of the evidence is contrary to the findings of the family court. *See Lewis*, 392 S.C. at 392, 709 S.E.2d at 655 (holding the family court's factual findings will be affirmed unless the appellant satisfies the appellate court that the preponderance of the evidence is against the family court's finding). In light of the longevity of the parties' marriage and the prohibition against imposing a severe penalty for marital fault, we affirm the family court's weighing of the equitable apportionment factors and division of the marital assets.

2. We further find the facts here support the family court's findings that the parties contributed equally to the acquisition of assets during this long-term marriage. *See Doe v. Doe*, 370 S.C. 206, 214, 634 S.E.2d 51, 56 (Ct. App. 2006) ("While there is certainly no recognized presumption in favor of a fifty-fifty division, we approve equal division as an appropriate starting point for a family court judge attempting to divide an estate of a long-term marriage."). In terms of direct contributions, Husband was the parties' primary source of income. However, the evidence demonstrates Wife was the parties' primary source of indirect contributions. *See* § 20-3-620 (B)(3) ("In making apportionment, the court must give weight in such proportion as it finds appropriate to . . . the contribution of each spouse to the acquisition, preservation, depreciation, or appreciation in value of the marital property, including the contribution of the spouse as homemaker; provided, that the court shall consider the quality of the contribution as well as its factual existence."); *Doe*, at 215, 634 S.E.2d at 56 ("[I]n many long-term marriages, one spouse becomes the primary breadwinner while the other spouse makes less or even no money in order to have the flexibility to keep the household running smoothly. This arrangement is agreed upon, often implicitly, among the parties, and it would be unfair to the spouse who undertook household duties for the family court to apportion the marital estate solely based on the parties' direct financial contributions."). Wife moved from Greenville to Easley to accommodate Husband's career aspirations and cared for Daughter as well as the parties' home and property. Additionally, Wife worked outside the home for some time before Daughter was born, during her childhood, and after she completed high school. Wife also cared for Husband following his heart attack and back surgery, cared for Daughter after she underwent surgery as an adult, and spent at least one full day each week caring for her elderly mother. Wife managed the parties' household expenses, was primarily responsible for landscaping the parties' property in Easley, and maintained the parties' beach house. We find no error in the family court's findings regarding the parties' respective contributions to the marital assets.

3.   While we acknowledge the family court did not specifically address the parties' health in the decree, the family court heard and was able to consider trial testimony regarding the respective health situations of the parties.  *See* § 20-3-620 (B)(5) ("In making apportionment, the court must give weight in such proportion as it finds appropriate to . . . the health, both physical and emotional, of each spouse . . . ."). Despite Husband's health concerns, including diabetes, a heart attack, and prior back surgery, he refused to be proactive in his recovery by failing to participate in the exercise or rehabilitation programs prescribed by his doctor.  Husband testified as to his own mental health, and there is no evidence in the record indicating Wife has any health issues.  We find the family court appropriately considered the health of each party in apportioning the marital estate, and Husband has not demonstrated error.  *See Lewis*, 392 S.C. at 392, 709 S.E.2d at 655 (holding the family court's factual findings will be affirmed unless the appellant satisfies the appellate court that the preponderance of the evidence is against the family court's finding); *Widman*, 348 S.C. at 111, 557 S.E.2d at 700 ("The statute vests in the family court the discretion to decide what weight should be assigned to the various factors.").

**AFFIRMED.**

**WILLIAMS, C.J., MCDONALD, J., and LOCKEMY, A.J., concur.**